# Massachusetts Mutual Life Insurance Company Tax Assessment Case.

Argued November 28, 1966. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused October 25, 1967.

*Maurice Louik,* County Solicitor, with him *John F. Murphy* and *James Victor Voss,* Assistant County Solicitors, and *Francis A. Barry,* First Assistant County Solicitor, for Board, appellant.

*Niles Anderson,* Solicitor, with him *Justin M. Johnson,* Assistant Solicitor, for School District of Pittsburgh, intervening appellant.

*Frederick A. Boehm*, Assistant City Solicitor, with him *David Stahl,* City Solicitor, for City of Pittsburgh, intervening appellant.

*T. Robert Brennan*, with him *Harvey E. Robins, Leonard M. Mendelson, Gustav W. Wilde,* and *Brennan and Brennan,* for appellee.

OPINION BY MR. JUSTICE COHEN, September 26, 1967:

This appeal involves the triennial assessment for the years 1963, 1964 and 1965 of property owned by the Massachusetts Mutual Life Insurance Company (owner) and located in the City of Pittsburgh. The Board of Property Assessment, Appeals and Review of Allegheny County (Board) placed an assessed value of $1,107,000 on the property.

Before the court below, the Board placed the assessment in evidence and rested. The owner offered in evidence the certification of the ratio of assessed value to market value for Allegheny County made by the State Tax Equalization Board. This offer was rejected by the court. The owner then offered testimony of a recognized real estate expert who testified that the fair market value of the property on January 1, 1963, was one million dollars.

The Board called as its only witness a realtor who had served as an assessor for the Board and was a member of the Board. He testified that the "actual market value" of the property on January 1, 1963, was $1,700,000 and the "fair market value" as fixed by the Board was $1,107,000.

In this case, as well as in all companion cases brought before this Court from Allegheny County, extensive testimony was taken regarding the common level ratio of assessed value to fair market value of real estate throughout Allegheny County for the

years 1958 through 1963. On behalf of the various tax-payers (including the present owner) testimony was presented by Dr. Raymond Richman, an economist, who had made a thorough study of sales of real estate in the county, had eliminated from consideration sales not negotiated at arm's length and had compared the assessed values to the sales prices in order to arrive at the ratio. For the years 1958, 1959 and 1960 Dr. Richman examined all such sales; for the year 1961 he used Census Bureau figures; for 1962 and 1963 he used a sampling technique. For 1962 and 1963 the average ratios shown by his study were 43.44% and 43.4% respectively. Also the study showed that the assessments tended in each year to cluster around ratios of 42% to 46%.

The Board called as its witnesses two qualified real estate brokers and a graduate economist and statistician. The first broker testified that in his opinion the ratio of assessed value to market value of all real estate in the county was between 50% and 70%. The second testified that he believed the similar ratio of downtown real estate on January 1, 1963, was 60%. The statistician criticized certain elements of Dr. Richman's study with a view to discrediting its validity.

The court below, considering both the market value testimony and the uniformity evidence, concluded that the market value of the subject property as of January 1, 1963, was $1,380,000; that the Richman study was valid; and that, therefore, the common level ratio of assessed to market value for the triennium was 44%. It then reduced the assessment to $607,200 (44% of $1,380,000).

The Board filed exceptions and requested argument before the court en banc. This request was refused and the exceptions dismissed. The Board appealed. It should be noted that in this, as well as in the other appeals by the Board, the City of Pittsburgh and the

School District of Pittsburgh have intervened. It should also be noted that no cross-appeal was taken by any owner in these cases.

The Board and intervenors raise a variety of questions regarding the validity of the Richman ratio testimony, the effect of the prima facie validity of the Board's assessment, the sufficiency of the owner's expert witness' testimony to rebut the prima facie validity of the assessment, the propriety of the lower court's action in arriving at a market value somewhere between the value set by the owner's witness and that testified to by the Board member without giving a detailed explanation for its decision, the need for a breakdown of the assessment between land and buildings and the effect of the decision on local finances.

. We have considered the testimony and other elements of the records in this and the other appeals by the Board carefully. In so doing, we have reviewed the series of 1965 decisions and opinions of this Court appearing in Volume 417 of the official reports, particularly *Deitch Company v. Board of Property Assessment,* 417 Pa. 213, 209 A. 2d 397 (1965), *McKnight Shopping Center, Inc. v. Board of Property Assessment,* 417 Pa. 234, 209 A. 2d 389 (1965), *Pittsburgh Miracle Mile Town & Country Shopping Center, Inc. v. Board of Property Assessment,* 417 Pa. 243, 209 A. 2d 394 (1965), and *Rieck Ice Cream Company Appeal,* 417 Pa. 249, 209 A. 2d 383 (1965). We find nothing in the present appeals justifying a departure from the principles enunciated in those cases and, therefore, reaffirm those principles.

We also agree with the manner in which President Judge ERVIN, speaking for a unanimous Superior Court, applied the principles enunciated in our cases. After quoting at length from Mr. Justice ROBERTS' majority opinion in *Deitch,* the Superior Court concluded that the lower court had erred in proceeding under a

theory which differed from *Deitch*. *Borg-Warner Corporation v. York Tax Review Board*, 206 Pa. Superior Ct. 172, 213 A. 2d 127 (1965).

With specific reference to the present case, we are satisfied that the ratio testimony produced by the owner through Dr. Richman was competent and credible and was properly accepted by the court below. With respect to market value of the property we hesitate to guess at the Board's reasons for this appeal, but considering (1) the fact that the market value set by the court below was higher than the assessment and (2) the incredible nature of the Board's testimony regarding a very vaguely explained difference between a so-called "actual market value" and the "fair market value" of the property, we are inclined to believe that the Board fared rather well. We, too, would prefer more discussion by the lower court, but we can appreciate a certain degree of impatience with the Board's position and a desire to reach a prompt and reasonable decision.

There remain just two other matters for discussion. First, the problem of separate assessments on land and building (necessary for the City of Pittsburgh because of the different millages applicable to each) is again raised. In our 1965 opinions we pointed out that correct assessment procedure requires appraisal of the property as a whole. We adhere to that position. We did point out, however, that the required itemization between land and building is an intermediate step in arriving at a total assessment. *Rieck Ice Cream Company Appeal*, supra. Nothing in our opinions precludes the making of this itemization by the assessor initially, and nothing precludes the parties from seeking review of the correctness of this breakdown once the value of the entire property is established. In this connection it should be noted we have specifically approved the procedure of valuing first, the entire prop-

erty, second, the land and, then, allocating the balance to the building. *John Wanamaker, Philadelphia, Appeal*, 360 Pa. 638, 646, 63 A. 2d 349, 353 (1949).

There is nothing new or novel about this procedure. As long ago as *Pittsburgh Terminal Coal Company Appeals*, 83 Pa. Superior Ct. 535, 537, 538 (1924), it was established that: "When an appeal is taken from the decision of the board of revision and appealed to the court of common pleas, the question before the latter tribunal is not whether the value placed upon certain constituent elements properly entering into the value of the subject of taxation is just and equitable, but whether the assessment of the subject as a whole is just and equitable."

We repeat. The appeal to the court is from the assessment as a whole; the primary duty of the court is to review the assessment on the whole property. *Casa Loma, Inc. v. Board of Property Assessment*, 417 Pa. 257, 209 A. 2d 387 (1965). Thereafter, if the parties cannot agree on the division between land and buildings, this matter, too, may be considered but only after the assessment of the whole property has been determined.

Intervenors raise a question concerning the financial impact of these cases upon local finances and point to our decision in *Wilson v. Phila. School Dist.*, 328 Pa. 225, 195 Atl. 90 (1937), as precedent for requesting prospective application only of the uniformity principle set forth in *Deitch* and the other 1965 cases, supra. Apart from the fact that the *Wilson* case involved an equity (injunction) proceeding in which we held unconstitutional a statute delegating taxing power to the school district and was thus in a far different posture before us and apart, also, from the fact that the records here are hardly conclusive on the revenue effects of these decisions, we find no reason to accept this contention. The principle of uniformity is hardly a new one

and no taxpayer should be asked to pay more than his fair share of taxes. Moreover, the records before us indicate that the disparities present here were not unknown to the taxing authorities, and their present request comes too late to receive a sympathetic reaction even if we could grant it in the present context.

The order of the court below is affirmed.

Mr. Chief Justice BELL concurs in the result.

Mr. Justice EAGEN dissents.