May Department Stores Company, Appellant,
*v.* Allegheny County Board of Property
Assessment, Appeals and Review
et al., Appellants.

Argued October 8, 1970.   Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Frank W. Ittel,* with him *Frank W. Ittel, Jr.,* and *Reed, Smith, Shaw & McClay,* for property owner.

*John F. Murphy,* Assistant County Solicitor, with him *Maurice Louik,* County Solicitor, for Board of Property Assessment, Appeals and Review of the County of Allegheny.

*Richard L. Rosenzweig,* Borough Solicitor, with him *Aaron Rosenzweig,* and *Rosenzweig & Rosenzweig,* for Borough of Monroeville.

*Thomas M. Rutter, Jr.,* School District Solicitor, and *Goehring, Rutter & Boehm,* for Gateway School District.

OPINION BY MR. JUSTICE ROBERTS, January 25, 1971:

We are called upon to determine the correctness of an assessment made by the Board of Property Assessment, Appeals and Review, of Allegheny County and subsequently modified by the Court of Common Pleas of Allegheny County. We affirm.

In 1965, the Board notified the May Department Stores Company that the assessment value[1] of certain property owned by the Company in Monroeville was being increased for the triennium of 1965, 1966, and 1967 as follows:

---

[1] One of the disputes in this case is whether the following figures were at 100% of market value, or at some uniform lower percentage of market value, i.e., assessment value. We agree with the trial court that they were assessment value figures. See discussion infra, pp. [561-4]

1965 ...................... $ 2,737,740.00
1966 ...................... $ 2,757,040.00
1967 ...................... $ 2,770,040.00[2]

The Company filed an administrative appeal, and the Board sustained the assessment on June 21, 1965. The Company then filed an appeal on July 16, 1965, in the court of common pleas. Prior to the hearing, the Borough of Monroeville and the Gateway School District filed petitions requesting that they be made parties of record. They had interests in the proceeding because they base their taxes on assessments made by the Board. Their petitions to intervene were granted.[3] Hearing was held on October 15, 1969, the delay allegedly having been caused by the series of assessment decisions by this Court in 1965 and 1967. See *Massachusetts Mutual Life Insurance Company Tax Assessment Case*, 426 Pa. 566, 235 A. 2d 790 (1967) and cases following; *Deitch Company v. Board of Property Assessment*, 417 Pa. 213, 209 A. 2d 397 (1965) and cases following.

At trial the Board presented the above assessment figures. The Company then called its own alleged expert witness, M. M. Juskalian, who was allowed to testify over the Board's objection. In his opinion, using both a cost and an income approach, the fair market

---

[2] The assessment for the preceding triennium, 1962-1964, was $2,395,520.00. The Company appealed that assessment to the court of common pleas, and in an order dated November 19, 1964, Judge Robert VAN DER VOORT reduced the assessment to $2,281,000.00.

The changes in 1966 and 1967 are because a new tire store was begun on the property in 1966, and was completed in 1967. The Company has not challenged the correctness of these assessment changes for 1966 and 1967 either as originally determined by the Board or as modified by the court of common pleas. We therefore will discuss only the correctness of the 1965 assessment.

[3] We will refer to the Board and the intervenors collectively as the Board, as they filed but one brief.

value of the Company's property as of January 1, 1965, was $3,500,000.00.

The Board put on rebuttal testimony, and called its own expert, John K. Ellis. He placed a value of $5,-509,000.00 on the property as of January 1, 1965.

After hearing this evidence, the trial court fixed the fair market value of the property at $4,250,000.00. It took judicial notice of a ratio of 50% as being the uniform percentage at which land was being assessed in this taxing district for the 1965-1967 triennium. By multiplying the fair market value by the common level percentage, the trial court held the proper assessment was $2,125,000.00 as of January 1, 1965, $2,145,000.00 in 1966, and $2,158,000.00 in 1967. Both the Board and the Company have taken appeals from the same order.

The Company, in its appeal, asserts that the Board was estopped from offering rebuttal testimony because the initial assessment ($2,737,740.00) was allegedly at 100% of "market value." The Company urges that consequently the trial court erred in finding a higher "market value" ($4,250,000.00). The Company also argues that if the common level ratio of assessed to market value for the triennium 1963-1965 was 44%, the Board cannot assess real estate outside the city limits at a higher rate for the 1965-1967 triennium.

Contrariwise, in its appeal the Board challenges the qualifications of the Company's expert witness. The Board also alleges that the trial court erred in lowering the triennium assessment (to $2,125,000.00) from the Board's original figure ($2,737,740.00) when the Company failed to establish that its property was assessed at a higher ratio of assessed to fair market value than other properties in the same taxing district.

This Court has set down its views concerning assessments in two recent series of cases. See *Massachu-*

*setts Mutual Life Insurance Company Tax Assessment Case,* supra (and cases following) ; *Deitch Company v. Board of Property Assessment,* supra (and cases following).[4] There is no need to review the holdings or principles of those cases. Suffice it to say they control our approach to the instant case.

The Company's argument that the Board's assessment was at actual or market value is not new to this Court. The Company relies on Act of May 22, 1933, P. L. 853, §402, as amended, 72 P.S. §5020-402, which requires that real estate in Allegheny County be assessed at its actual value. We answered this argument in *Deitch Company v. Board of Property Assessment,* supra: "However, we, too, recognize what the

---

[4] The complete list of these two recent sets of Allegheny County assessment cases is as follows: In Volume 426 of our official reports see *Massachusetts Mutual Life Insurance Company Tax Assessment Case,* 426 Pa. 566, 235 A. 2d 790 (1967) ; *Federal Cold Storage Company Tax Assessment Case,* 426 Pa. 573, 235 A. 2d 800 (1967) ; *Crescent Realty & Investment Company Tax Assessment Case,* 426 Pa. 575, 235 A. 2d 799 (1967) ; *5th and Wood Realty Corp. Tax Assessment Case,* 426 Pa. 577, 235 A. 2d 798 (1967) ; *Regional Industrial Development Corporation of Southwestern Pennsylvania Tax Assessment Case,* 426 Pa. 578, 235 A. 2d 797 (1967) ; *Stanley Company of America, Inc. Tax Assessment Case,* 426 Pa. 581, 235 A. 2d 800 (1967) ; *F. W. Woolworth Company Tax Assessment Case,* 426 Pa. 583, 235 A. 2d 793 (1967) ; *W. T. Grant Company Tax Assessment Case,* 426 Pa. 587, 235 A. 2d 796 (1967) ; *Sixth Liberty, Inc. Tax Assessment Case,* 426 Pa. 589, 235 A. 2d 801 (1967).

In Volume 417 of our official reports see *Deitch Company v. Board of Property Assessment,* 417 Pa. 213, 209 A. 2d 397 (1965) ; *McKnight Shopping Center, Inc. v. Board of Property Assessment,* 417 Pa. 234, 209 A. 2d 389 (1965) ; *Pittsburgh Miracle Mile Town & Country Shopping Center, Inc. v. Board of Property Assessment,* 417 Pa. 243, 209 A. 2d 394 (1965) ; *Rieck Ice Cream Company Appeal,* 417 Pa. 249, 209 A. 2d 383 (1965) ; *Casa Loma, Inc. v. Board of Property Assessment,* 417 Pa. 257, 209 A. 2d 387 (1965) ; *H. J. Heinz Company v. Board of Property Assessment,* 417 Pa. 257, 209 A. 2d 418 (1965).

Legislature has recognized—that, as a practical matter, in Allegheny County, as in many other counties, real estate is frequently assessed at a percentage which is less than market value. Thus, the Act just cited further provides that the assessors should accomplish equalization of the subject property in accordance with other assessments in the taxing district." Id. at 218, 209 A. 2d at 400. Thus, the Board can assess at any percentage of actual or market value, so long as ". . . the ratio of assessed value to market value adopted by the taxing authority—be it 20%, 60% or 100%—. . . [is] applied equally and uniformly to all real estate within the jurisdiction of such authority." *McKnight Shopping Center, Inc. v. Board of Property Assessment,* 417 Pa. 234, 240, 209 A. 2d 389, 392 (1965).

There is no charge in either appeal that the Company's property is being assessed at a higher ratio than other surrounding properties in the district.[5] Undoubtedly it would be more helpful if the Board indicated at the time of its initial assessment what the applicable ratio was to be for the upcoming triennium. However, to speak of the Board being bound by its initial assessment and estopped from offering clarifying evidence distorts basic principles of estoppel, for that doctrine involves a party relying on a representation or position of another to his detriment. *Sunseri v. Sunseri,* 358 Pa. 1, 55 A. 2d 370 (1947) ; *Fedas v. Insurance Co. of State of Pennsylvania,* 300 Pa. 555, 151 Atl. 285 (1930).

The Company, in all likelihood, did not rely on the Board's initial assessment as being 100% of actual value because the Company's entire challenge to the Board's assessment consisted of an expert witness who testified the Company's property had a market value of $3,500,000.00—almost a million dollars more than

---

[5] The Company did make such an argument before the trial court, but has not pursued it on appeal.

the Board's initial assessment figure. It is doubtful that any person or company would go to the trouble and expense of extended litigation to prove their property should be assessed at a higher value than that fixed by the appropriate board.

Further, the Board is entirely correct when it asserts that it has the right to present its own evidence of market value and ratio of market value to assessment value. In *Deitch Company v. Board of Property Assessment,* supra, we clarified the significance of the Board's presentation of the assessment record: "The proceedings in the trial court are de novo and the proper order of proof in cases such as the present one has long been established. The procedure requires that the taxing authority first present its assessment record into evidence. Such presentation makes out a prima facie case for the validity of the assessment in the sense that it fixes the time when the burden of coming forward with evidence shifts to the taxpayer. If the taxpayer fails to respond with credible, relevant evidence, then the taxing body prevails. But once the taxpayer produces sufficient proof to overcome its initially allotted status, the prima facie significance of the Board's assessment figure has served its procedural purpose, and its value as an evidentiary device is ended. *Thereafter such record, of itself, loses the weight previously accorded to it* and may not then influence the court's determination of the assessment's correctness. . . .

"*Of course, the taxing authority always has the right to rebut the owner's evidence and in such a case the weight to be given to all the evidence is always for the court to determine. . . .*" Id. at 221-22, 209 A. 2d at 402 (footnotes and citations omitted) (emphasis added).

Thus, even if the assessment was at 100% of market value, as contended by the Company, once the taxpayer

produces sufficient evidence to overcome the Board's assessment figure, the trial court should consider and weigh equally all the evidence presented, including rebuttal testimony.

The Company's second argument is equally without merit. By contending the Board is restricted to the ratio that existed for the prior triennium, the Company is urging this Court to freeze the ratio at 44% forever.

The figure of 44% came from our decision in *Massachusetts Mutual Life Insurance Company Tax Assessment Case,* supra, where we were concerned with the 1963-1965 triennium. That figure has no binding authority for the 1965-1967 triennium, the taxing period in question in this appeal. "[T]he issue in an assessment case is what is a proper market valuation and assessment for *this* triennial or taxing period, not for a prior or subsequent period. Hendel Appeal, 403 Pa. 635, 170 A. 2d 109 (1961)." *Rieck Ice Cream Company Appeal,* 417 Pa. 249, 254, 209 A. 2d 383, 385-86 (1965).

In addition, our past cases have expressly approved an identical alteration. See *Crescent Realty & Investment Company Tax Assessment Case,* 426 Pa. 575, 235 A. 2d 799 (1967) (where, in an Allegheny County appeal, a common level ratio of 42% for the triennium beginning in 1960 was approved); *Massachusetts Mutual Life Insurance Company Tax Assessment Case,* supra (where, in a similar appeal from Allegheny County, a common level ratio of 44% was approved for the following triennium).

No ruling of our Court exists for the 1965-1967 triennium in Allegheny County. The trial court was entirely correct in taking judicial notice of a common level ratio for the taxing district, and neither party seriously contests the finding that the applicable ratio is 50% throughout the district. Rather, the Company's

appeal questioned the Board's capacity to alter the ratio from the previous triennium—a power the Board clearly possesses.

The Company alternatively suggests that the prior judicial determination of the proper market value for its property in the preceding triennium,[6] precludes the Board from raising the market value for this, the succeeding taxing period. We rejected a similar argument in *Rieck Ice Cream Company Appeal,* supra. ". . . While a prior assessment may be admissible for some purposes, we have clearly held it cannot be considered to be res judicata of the current fair market value.

"We have held in Sheldon Hotel Corporation Assessment Appeal, 362 Pa., 313, 66 A. 2d 242 (1949) : '. . . that a real estate assessment for purposes of taxation for one year is not res judicata of the question of the property's fair market value for assessment purposes for a succeeding or later year. No decision of this State, whereof we are aware, suggests to the contrary; and, certainly, the appellant has cited none. The decisional law of other jurisdictions fully confirms the view we take of the matter. . . .' " Id. at 252, 209 A. 2d at 384-85.

The arguments set forth by the Board in its appeal are equally groundless. As to the Board's objections to the qualifications of the Company's expert witness, M. M. Juskalen, the trial court found him to be a qualified expert in his field. "[I]t is a question for the discretion of the trial judge whether a witness has shown himself sufficiently qualified to testify, and his ruling in that regard will not be reversed by an appellate court except in case of clear error. . . ." *Stevenson v. East Deer Twp.,* 379 Pa. 103, 106-7, 108 A. 2d 815, 816-17 (1954) (citing cases). Accord, *Reardon v. Meehan,*

---

[6] See note 2, supra.

424 Pa. 460, 227 A. 2d 667 (1967) ; *Lehigh Valley Trust Co. v. Pennsylvania Turnpike Comm.*, 401 Pa. 135, 163 A. 2d 86 (1960).

Ample evidence exists in the record to support the trial court's ruling on this issue. M. M. Juskalen was a professional real estate appraiser with ten years of experience, and he had testified in many other cases. He holds a Bachelor of Science degree in Business Administration from Temple University, where he majored in real estate. He also had successfully completed several courses offered by the American Institute of Real Estate Appraisers as well as courses in real estate conveyancing, appraising, fire and casualty insurance, and building construction given by the North Philadelphia Real Estate Board and the Philadelphia Board of Realtors. There was no clear error in admitting his testimony.

The Board's second and final argument alleges the Company failed to meet its burden of establishing that its property was assessed at a higher market valuation and a higher ratio than other assessments in the district.

The trier of fact must consider all competent evidence presented by the parties as to the value of the property in question. Here, the expert witnesses for both sides were qualified and gave relevant testimony. We have cautioned that a trial court ". . . may not disregard competent, credible and unrebutted evidence of market value and set its own market value on a property. . . ." *Rieck Ice Cream Company Appeal,* supra at 256, 209 A. 2d at 386. However, when conflicting reliable testimony exists, the trier of fact must weigh the evidence and determine the actual value, based on a careful consideration of the competent testimony.

In the *Deitch* case, supra, we summarized the duties of a trial court in assessment cases: ". . . [I]n deter-

mining the correctness of the assessment . . . the court below must first decide on the basis of the competent, credible and relevant evidence produced by all parties, what the fair market value of the property involved is. Of course, if the assessment is in excess of that value, it must be reduced. Secondly, the court must determine the appropriate ratio of assessed value to market value which exists in Allegheny County. The court must then apply the ratio thus found to the market value of the property in order to arrive at the proper assessment." Id. at 224, 209 A. 2d at 403.

The trial court here followed the above process with commendable thoroughness. However, in the future it would be desirable for the trial court to set out in some detail the basis for its determination of the correct market value. This would be of great benefit not only to the parties then before the Court, but also to appellate courts upon review.

No error has been brought to our attention, nor does any appear on the record, which merits disturbing the trial court's disposition of this case. Accordingly, the order of the Court of Common Pleas of Allegheny County is affirmed.

Mr. Justice CoHEN took no part in the decision of this case.