138 Pa. Commonwealth Ct. 30 (1991)
587 A.2d 820
WESTINGHOUSE ELECTRIC CORPORATION (R & D CENTER), Appellant,
v.
BOARD OF PROPERTY ASSESSMENT, APPEALS AND REVIEW and The Borough of Churchill, Woodland Hills School District and County of Allegheny, Appellees.
The BOROUGH OF CHURCHILL and Woodland Hills School District
v.
BOARD OF PROPERTY ASSESSMENT, APPEALS AND REVIEW, et al.
Appeal of WESTINGHOUSE ELECTRIC CORPORATION (R & D CENTER), The BOROUGH OF CHURCHILL and Woodland Hills School District
v.
BOARD OF PROPERTY ASSESSMENT, APPEALS AND REVIEW, et al.
Appeal of The BOROUGH OF CHURCHILL and Woodland Hills School District and County of Allegheny, The BOROUGH OF CHURCHILL and Woodland Hills School District
v.
BOARD OF PROPERTY ASSESSMENT, APPEALS AND REVIEW, et al.
Appeal of The BOROUGH OF CHURCHILL and Woodland Hills School District and County of Allegheny.
Commonwealth Court of Pennsylvania.
Argued October 1, 1990.
Decided January 18, 1991.
Rearguments Denied March 26, 1991.
*33 Philip Baskin, with him, Marvin A. Fein, Houston Harbaugh, P.C., Pittsburgh, for appellant, Westinghouse Elec. Corp.
Robert W. Goehring, Goehring & West, Solicitor for appellee, Borough of Churchill, Pittsburgh, Pa.
Patrick J. Clair, Sol., for appellee, Woodland Hills School Dist., Pittsburgh, Pa.
Ira Weiss, Deputy County Sol., for appellee, Allegheny County, Pittsburgh, Pa.
Before DOYLE and SMITH, JJ., and BARRY, Senior Judge.

OPINION
BARRY, Senior Judge.
Westinghouse Electric Corporation (Westinghouse) appeals an order of the Court of Common Pleas of Allegheny County which assessed Westinghouse's Research and Development Center for the years 1977-86. The taxing bodies, the County of Allegheny, the Borough of Churchill (Borough) and the Woodland Hills School District (School District) have also appealed.
The Board of Property Assessment, Appeals and Review (Board) originally assessed the R & D Center at $9,960,000 for the years 1977 and 1978, at $9,985,000 for the years *34 1979 and 1980 and at $10,010,000 for 1981. Westinghouse sought reductions in the assessments and the Board left the assessments for the years 1977-79 intact; the Board reduced the assessments for the years 1980 and 1981 to $7,589,000 and $7,614,000 respectively. Westinghouse, the Borough and the School District all filed appeals to the Court of Common Pleas of Allegheny County. These appeals were consolidated for trial.
For the years 1981-86, the Board assessed the R & D Center at $7,614,000. Pursuant to Section 518.1 of The General County Assessment Law, Act of May 22, 1933, as amended, 72 P.S. § 5020-518.1, the appeals mentioned above acted as automatic appeals for the years 1982-86. Trial was held between June 3, 1986 and September 24, 1986, with almost 1500 pages of testimony being transcribed. The parties stipulated that, for the years 1980 and thereafter, the common level ratio used in Allegheny County was 25%. The trial court, therefore, was required to determine the common level ratio for the years 1977-79 and the fair market value of the R & D Center for all years involved. The trial court, in an opinion read from the bench on September 24, 1986, determined the fair market value of the property for the years 1980-86; applying the 25% ratio which had been stipulated to, the court assessed the property at $7,000,000 for 1980, $7,250,000 for 1981, $7,375,000 for 1982, $7,625,000 for 1983, $7,562,500 for 1984, $7,875,000 for 1985 and $8,000,000 for 1986. After making findings concerning the common level ratio in a bench opinion on September 30, 1986, which the court found to be 39%, the court thereafter assessed the R & D Center at $10,140,000 for 1977, $10,725,000 for 1978 and $10,920,000 for 1979.
In compliance with a directive from the trial court that it could appeal or file exceptions, on October 9, 1986, Westinghouse filed an application for post-trial relief pursuant to Pa.R.C.P. No. 227.1. The trial court issued an order on October 14, 1986, which reiterated the factual findings made in the two opinions from the bench. That opinion was docketed with the Allegheny County Prothonotary on October *35 15, 1986. On October 23, 1986, the taxing bodies filed an application for post-trial relief. Following oral argument on October 30, 1986, the trial court denied both motions by order of October 31, 1986. On November 13, 1986, Westinghouse filed a notice of appeal to this Court from the October 31, 1986 order. On November 26, 1986, the taxing bodies filed a notice of appeal to this Court from that October 31, 1986 order.
This Court, on July 25, 1988, quashed the appeals under the belief that they were untimely. We held that The General County Assessment Law, Act of May 22, 1933, P.L. 853, as amended, 72 P.S. §§ 5020-101 to 5020-602, made no provision for an application for post-trial relief and, since no local rule required the same, the appeals should have been filed within thirty days of the June 20, 1985 order. We stated that an application for post-trial relief under Pa. R.C.P. No. 227.1 and any orders issued pursuant to such applications were nullities. [118 Pa.Commonwealth Ct. 152, 544 A.2d 1088 (1989).] The Supreme Court of Pennsylvania reversed, 525 Pa. 80, 575 A.2d 550 (1990), holding that when the trial court is willing to accept post-trial motions or exceptions its decision to do so is final especially where the courts have approved this practice in the past. The cases of Chester Holding Corp. Appeal, 390 Pa. 152, 134 A.2d 668 (1957) and Hollidaysburg Manor Associates v. Blair County Board of Assessment and Revision of Taxes, 26 Pa.Commonwealth Ct. 628, 364 A.2d 959 (1976), were cited for the proposition that the filing of exceptions had been approved in the past.[1] The Supreme Court reversed and remanded to this Court for consideration of the merits of the appeal.
It is clear that the proceedings in the trial court are de novo, Deitch Company v. Board of Property Assessment, 417 Pa. 213, 209 A.2d 397 (1965), and that the court in a tax assessment appeal is the finder of fact. Park Drive *36 Manor Tax Assessment Case, 380 Pa. 134, 110 A.2d 392 (1955). As this Court has reiterated in Kriebel Tax Assessment Case, 79 Pa.Commonwealth Ct. 466, 470, 470 A.2d 649, 652 (1984),
"In tax assessment appeals it is the court's duty to: 1) determine the property's fair market value on the basis of the competent, credible and relevant evidence presented by the parties, 2) determine the current ratio of assessed to market value in the county, and 3) direct the application of that ratio to the fair market value found by the court." (Footnote omitted.)[2]
Our scope of review in a tax assessment appeal is limited to determining whether the trial court abused its *37 discretion, committed an error of law, or whether its decision is supported by substantial evidence. Reichard-Coulston, Inc. v. Revenue Appeals Board Northampton County, 102 Pa.Commonwealth Ct. 227, 517 A.2d 1372 (1986); Walnut-Twelve Associates v. Board of Revision, 131 Pa.Commonwealth Ct. 404, 570 A.2d 619 (1990).

DETERMINATION OF FAIR MARKET VALUE
The trial judge is the fact finder on evaluation in a tax assessment appeal. Park Drive Manor. As Judge (now President Judge) Craig of this Court stated in the case of In Re: 701 Liberty Avenue Realty Co., 70 Pa.Commonwealth Ct. 377, 379, 453 A.2d 59, 60 (1982), "[t]he trial court is the factfinder, particularly as to credibility; we are not. Our limited scope of review is only to reverse the trial court when parties have shown it to have been `clearly in error.'" In his oral adjudication from the bench, the trial court found that the witnesses on valuation were all qualified as experts, despite the fact that there were some questions about the nature of their qualifications, including the fact that they may not have been licensed appraisers in Pennsylvania. The trial court rejected the suggestion that the testimony of the taxpayers' experts was not worthy of consideration because their calculations differed substantially from that of the experts of the taxing bodies. As the court correctly noted, the experts' testimony, if competent, and its weight and credibility are for the court to resolve.
Westinghouse also objected to the introduction into evidence of the sale-leaseback of the R & D Center which evidence was also objected to by the taxing bodies. The buildings located at the R & D Center were transferred by Westinghouse to Greyhound Leasing in December of 1985 for $23,400,000 as part of a five property package. Westinghouse argues that sales of this kind, because they are used as an alternative financing arrangement, generally result in values for the properties sold far in excess of their actual fair market value. The taxing bodies argue that the sale-leaseback price of $23,400,000 indicated a value less *38 than the actual value of the property. We believe that the admission of this testimony and its consideration by the trial court was within the discretion of the trial court and was not reversible error.
Westinghouse also objects that the trial court erred by refusing to admit the appraisal report of William A. Berman, an expert retained by the Board. It was known that the appraisal of Mr. Berman indicated a value of $24,000,000 of the property. Westinghouse argues that because Mr. Berman was a resident of the state of Florida and could not be subpoenaed he could not be retained by Westinghouse and the appraisal should have been admitted. We believe that the trial court properly invoked Pa.R.C.P. 4003.5(a)(3) which provides as follows:
A party may not discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, except a medical expert as provided in Rule 4010(b) or except on order of court as to any other expert upon a showing of exceptional circumstances under which it is impractical for the parties seeking discovery to obtain facts or opinions on the same subject by other means, subject to such restrictions as to scope and such provisions concerning fees and expenses as the court may deem appropriate.
We find no error in the exclusion of this evidence.
Westinghouse also argues that the "splitting the difference" approach apparently adopted by the trial court in determining the fair market value of the Westinghouse property totally disregards the relative credibility and weight of the opposing experts and renders traditional methods of evidentiary proof meaningless. Our Court has stated "[n]or does the fact that the trial court's determination that the fair market value of the property lies between the valuations offered by the expert witnesses render that determination arbitrary." Commonwealth Trust Co. of Pittsburgh Appeal, 88 Pa.Commonwealth Ct. 618, 622, 491 *39 A.2d 929, 931 (1985). Pittsburgh-Des Moines Steel Co., Inc. v. McLaughlin, 77 Pa.Commonwealth Ct. 565, 466 A.2d 1092 (1983).
We conclude that the findings of the trial court on the issue of the fair market value of the property are based on substantial evidence and free of legal error.

COMMON LEVEL RATIO
The "splitting the difference" approach, not inappropriate in determining fair market value by the trial court, is totally erroneous when used in determining the common level ratio. We believe that a fair reading of the trial court's adjudication indicates that there was a "splitting of the difference" concept involved in the determination of the common level ratio. The court stated: "We are the finder of facts and must weigh the evidence, and its determination will not be disturbed normally because the market value or the common level ratio is a factual question to be determined by a trial court on the basis of testimony." (N.T. p. 20, dated September 30, 1986.)
Article 8, § 1 of the Pennsylvania Constitution provides that all taxes must be uniform on the same class of subjects within the territorial limits of the authority levying the tax. In Deitch, the Supreme Court stated:
In determining, however, whether the constitutional requirement with respect to uniformity has been complied within a taxing district, all properties are comparable in constructing the appropriate ratio of assessed value to market value. This is because the uniformity requirement of the Constitution of Pennsylvania has been construed to require that all real estate is a class which is entitled to uniform treatment. (Citations omitted.)
Therefore, a trial court when it considers the question of a common level ratio must consider all properties in the taxing district. In the present case we are of the opinion that the trial court's determination of the common level ratio is not supported by substantial evidence. The only *40 direct evidence on common level ratio was presented by the taxpayer, Westinghouse. This testimony was elicited from Dr. Raymond L. Richmond, who prepared a statistical analysis of the ratio of tax assessments to fair market value in Allegheny County for the years 1977, 1978 and 1979 by comparing the sales prices and assessments of property sold throughout the county. In preparing this study Dr. Richmond excluded any conveyance which did not appear to be an arms length transaction such as conveyances by sheriff's deeds or between family members. This type of analysis was approved as competent and credible by the Supreme Court in the case of Massachusetts Mutual Life Insurance Co. Tax Assessment Case, 426 Pa. 566, 235 A.2d 790 (1967). The data upon which Dr. Richmond based his report was provided to him by Allegheny County, a party to this litigation, through its Bureau of Administrative Services. In the case of Chartiers Valley School District v. Board of Property, Assessment, Appeals and Review, 94 Pa.Commonwealth Ct. 4, 503 A.2d 66 (1985), the trial court and this Court refused to consider similar testimony because Dr. Richmond at the time of trial in that case no longer possessed property records or other sales data upon which his opinion of ratio was based and, therefore, he could not be cross-examined on his data. In this case, the computer tapes containing the official public records of Allegheny County were available and Dr. Richmond was, in fact, cross-examined fully with respect to the methodology used. The taxing bodies presented their own expert, Dr. Stephen Fineberg, whose testimony was limited to controverting the analytical methods used by Dr. Richmond. Dr. Fineberg did not himself perform a ratio study nor proffer any opinion on what the common level ratio should be for the years in question. In addition to the testimony of Dr. Richmond, Westinghouse also presented the following additional evidence:
1. A 1977 U.S. Census Bureau ratio study report, which, based on 1976 data, determined that the ratio in Allegheny *41 County was 26.9% for 1977. (Westinghouse Exhibit No. 15.)
2. A report dated June 9, 1976, by a Committee to Study and Report on Assessment Practices, Procedures and Policies which was appointed in 1976 by the Board of Commissioners of Allegheny County, (a party to this litigation, as noted previously), which stated that there was a ratio of 331/3 for 1977 based on 1976 data.
3. A memorandum dated April 28, 1976 from Dr. Charles T. Blocksidge, Director of Assessment of Allegheny County, one of the parties to this litigation, to Gordon Mulleneaux, Director of Administration of Allegheny County, which admits that the 1977 ratio for Allegheny County was between 24% and 27%. (Westinghouse Exhibit No. 6.)
Also admitted into evidence was a consent order entered by Judge Nicholas Papadakos of the Court of Common Pleas of Allegheny County, (now Supreme Court Justice Papadakos), dated October 5, 1978, in a case involving the Board of Property Assessment, Appeals and Review, the County and the County Commissioners, at that time defendants, and various municipalities and taxpayers as plaintiffs arising out of the case of Borough of Green Tree v. Board of Property Assessment, 459 Pa. 268, 328 A.2d 819 (1974). In the consent order, Judge Papadakos ordered the defendant Board of Property Assessment, Appeals and Review to continue to implement the recommendations set forth in the June 9, 1976 Report referred to above. Part of the recommendation of that committee was that the ratio of assessed valuation value to actual market value be formally established by the Board of Property Assessment, Appeals and Review at or near 331/3 no later than January 1, 1977.[3]
It is the opinion of the Court that, based on the above discussion, the trial court's finding of the common law ratio in this case was not supported by substantial evidence.

*42 SEVERABILITY OF THE ISSUES OF VALUATION AND COMMON LEVEL RATIO
The Supreme Court has, in several cases, indicated that the total assessment as a unit is the sole factor to be considered in determining the correctness of the assessment. North Park Village, Inc. v. Board of Property Assessments, Appeals and Review, 408 Pa. 433, 184 A.2d 253 (1962), McKnight Shopping Center v. Board of Property Assessment, 417 Pa. 234, 209 A.2d 389 (1965), Pittsburgh Miracle Mile Shopping Center v. Board of Property Assessment, 417 Pa. 243, 209 A.2d 394 (1965). In all of these cases, however, the issue was whether buildings or land could be separately assessed or must be assessed as a unit. In the present case we see no reason to disturb the trial court's finding on the fair market value of the properties in question. The two issues of fair market value and common level ratio are not so intertwined that we must follow the precedent set forth in the cases involving the unit assessment of lands and buildings.

CONCLUSION
Accordingly, we affirm the trial court's determination of the fair market value for all the years involved in this case. Since the parties have stipulated to the common level ratio for the years 1980, 1981, 1982, 1983, 1984, 1985 and 1986, the assessments for those years are affirmed. For the years 1977, 1978 and 1979, we reverse and remand for further consideration on the issue of the common level ratio.

ORDER
NOW, January 18, 1991, the orders of the Court of Common Pleas of Allegheny County, at Nos. GD 82-01690 and GD 82-01627, are affirmed insofar as they relate to the determination of the fair market value of the properties in question. The assessments for the years 1980, 1981, 1982, 1983, 1984, 1985 and 1986 are, accordingly, affirmed. Insofar *43 as the orders relate to the common level ratio to be applied for the years 1977, 1978 and 1979, the orders are reversed and remanded for further proceedings not inconsistent with the attached opinion.
Jurisdiction relinquished.
BYER, J., did not participate in the decision in this case.
NOTES
[1] We note that the Supreme Court has recently amended Rule 227.1(g) which now provides, as of January 1, 1990, that "a motion for post-trial relief may not be filed in an appeal from the final adjudication or determination of a local agency or a commonwealth agency as to which jurisdiction is vested in the court of common pleas."
[2] The General County Assessment Law has been amended to clarify the court's role in assessment appeals. 72 P.S. 5020-518.2 now provides as follows:

(a) In any appeal of an assessment the court shall make the following determinations:
(1) The market value as of the date such appeal was filed before the county commissioners, acting as a board of revision of taxes, or the board for the assessment and revision of taxes. In the event subsequent years have been made a part of the appeal, the court shall determine the respective market value for each such year.
(2) The common level ratio which was applicable in the original appeal to the county commissioners, acting as a board of revision of taxes, or the board for the assessment and revision of taxes. In the event subsequent years have been made a part of the appeal, the court shall determine the respective common level ratio for each such year published by the State Tax Equalization Board on or before July 1 of the year prior to the tax year being appealed.
(b) The court, after determining the market value of the property pursuant to subsection (a)(1), shall then apply the established predetermined ratio to such value unless the corresponding common level ratio determined pursuant to subsection (a)(2) varies by more than fifteen per centum (15%) from the established predetermined ratio, in which case the court shall apply the respective common level ratio to the corresponding market value of the property.
(c) Nothing herein shall prevent any appellant from appealing any base year valuation without reference to ratio.
1933, May 22, P.L. 853, art. V, § 518.2, added 1982, Dec. 13, P.L. 1160, No. 268, § 6, imd. effective. As amended 1986, Dec. 17, P.L. 1680, No. 194, § 3, imd. effective.
We note that, at the time of these appeals, the use of the common level ratios published by the State Tax Equalization Board were not admissible in evidence. Pittsburgh Miracle Mile Shopping Center v. Board of Property Assessment, 417 Pa. 243, 209 A.2d 394 (1965).
[3] Westinghouse argues in its brief that the consent order set a common level ratio of 25% beginning in the year 1980. We can find no support for this contention in the record.