## The May Department Stores Company *v.* Board of Property Assessment, Appeals and Review.

Argued March 5, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*David McNeil Olds*, with him *Edward W. Seifert*
and *Reed, Smith, Shaw & McClay*, for appellant.

*John F. Murphy*, Assistant County Solicitor, with
him *Francis A. Barry*, County Solicitor, for appellee.

OPINION BY JUDGE ROGERS, April 5, 1973:

The May Department Stores Company, the owner or
lessee of a number of properties in downtown Pitts-
burgh, filed with the Board of Property Assessment,
Appeals and Review of Allegheny County, petitions for
the reassessment of its said properties for the year 1968.
The Board denied the petitions without hearing. May
appealed to the Court of Common Pleas which, again
without hearing, dismissed the appeals on the ground
that it had no "jurisdiction" to hear the appeal.[1]

Assessments of real estate in Second Class Counties,
of which Allegheny is the only member, are governed
by the Act of June 21, 1939, P. L. 626, as amended, 72
P.S. §5452.1 et seq. This Act permits the division of
the County into three districts and the assessment for
a triennium of all of the properties in one of the divi-
sions each year. Section 7 of the Act of June 21, 1939,
72 P.S. §5452.7. The assessment of the May properties
had been made in 1965 for the triennium of 1966, 1967
and 1968. They were not appealed until these appeals
for the year 1968 only were filed on August 31, 1967.

---

[1] The court is given jurisdiction to hear such appeals by Sec-
tion 12 of the Act of June 21, 1939, 72 P.S. §5452.12.

The court held that a taxpayer may not under the Act appeal an assessment during the triennium unless the Assessors, as they are permitted to do, have changed his assessment in the meantime. This was error.

Section 13 of the Act of June 21, 1939, 72 P.S. §5452.13, provides pertinently: "The proper assessors shall, between the triennial assessments, revise any assessment or valuation according to right and equity by correcting errors and by adding thereto any property or subjects of taxation which may have been omitted or any new property or subjects of taxation which may have come into being since the last triennial assessment. . . . *Any such assessments as are made pursuant to the provisions of this paragraph shall be subject to appeal in the same manner as other assessments made pursuant to this act.* . . .

. . .

"The proper assessors shall also revise assessments and valuations between the triennial assessments by increasing or decreasing the same where the value of the property or subjects of taxation assessed or valued has changed by reason of any change of conditions thereon or adjacent thereto or in the vicinity thereof, or for the reason that the property assessed or valued has been subdivided or laid out into a plan of lots or other subdivisions, or for the reason that improvements have been placed thereon or added thereto, or for the reason that any public or other improvement has been made adjacent thereto or in the vicinity thereof, or for the reason that the assessor and the majority of the board decides that the assessor erred in the value which he placed on the property or subjects of taxation when making the triennial assessment, or where, for any other reason whatsoever, the value of the property has changed and it seems to the board necessary and equitable to make a change in the valuation thereof. The assessors shall also, between the triennial assessments

in all cases where it is apparent that any assessment is not in accord with the generality or uniform standard of assessments, revise and correct the same by increasing or decreasing the same where the value of the property or subjects of taxation assessed do not conform to the generality or uniform standard of assessments.
. . .

*"All assessments required to be made by the proper assessors in the year between the triennial assessment shall be returned to the board not later than the first Monday of September of the year preceding the one for which it is made."* (Emphasis supplied.) Section 14 reads: "At any time before such date, any taxable person may apply to the board for the reassessment of any subject of taxation which he considers incorrectly assessed or as to which he considers himself entitled to a change in valuation or to have mechanical or transcribing errors corrected." The court below construed Section 14 as conferring the right to appeal only on property owners whose assessments had been revised pursuant to Section 13. This is plainly incorrect. First, the right to appeal from Section 13 revisions is conferred in Section 13 so that the lower court's interpretation would render at least those portions of Section 14 authorizing appeals on account of alleged incorrect assessments or for changes in assessments supererogatory. Further, Section 14 authorizes appeals "[a]t any time before such date" referring, of course, to the date mentioned in the immediately preceding last sentence of Section 13, the first Monday of September of the year preceding. But that date, for Section 13 purposes, is the last date for return to the Board of assessments revised under Section 13. If Section 14 were to apply only to appeals from Section 13 revisions, the result would be the absurd requirement that the appeal be filed the same day the assessment was revised. Finally, it is not difficult to conceive of circumstances, such as

a reduction of all property assessments in a district save a selected few, in which the lower court's interpretation would run afoul of constitutional principles. *See Prichard v. Willistown Twp. School District,* 394 Pa. 489, 147 A. 2d 380 (1959). Our holding comports with the dictum of *Sixth Liberty, Inc. Tax Assessment Case,* 426 Pa. 589, 593, 235 A. 2d 801, 804 (1967).

The Board's fear of a sudden access of appeals as the result of this decision are, we hope, unfounded. Experience in counties where assessments are made on an annual basis teaches that the number of routine appeals is within the manageable limits and that only when a general revision is attempted do usually long-suffering property owners appeal in force.

In view of our holding, it is not necessary for us to comment on the lower court's observation that even if the taxpayer should be heard, it could not have proved its assertion that while other properties in the district had been assessed at a ratio of about 45% of market value, its properties were assessed at 100% of market value.

Orders reversed and records remanded to the court below for hearings and determinations of the appeals.