J. Donald McKinney et al. *v.* The Board of Commissioners of Allegheny County, Pennsylvania, Appellant.

Argued February 1, 1978, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS, BLATT and DISALLE.

*Thomas M. Rutter, Jr.,* Second Assistant County Solicitor, with him *Alexander J. Jaffurs,* County Solicitor, for appellant.

*T. Robert Brennan,* with him *Harvey E. Robins,* and *Brennan, Robins & Daley,* for appellees.

OPINION BY JUDGE ROGERS, April 26, 1978:

This is yet another case concerning the assessment of real property for local tax purposes in Allegheny County.[1] Here a group of taxpayers filed a petition for declaratory judgment in the Court of Common Pleas naming the Board of Commissioners of Allegheny County as respondents and asking the court to

---

[1] In *May Department Stores Company v. Allegheny County Board of Assessment,* 441 Pa. 556, 561 n.4, 272 A.2d 862, 864 n.4 (1971), Mr. Justice ROBERTS recorded fifteen such cases decided by the Supreme Court in the years 1965 and 1967. In *Pittsburgh Miracle Mile Town and Country Shopping Center, Inc. Tax Appeal,* 6 Pa. Commonwealth Ct. 187, 294 A.2d 226 (1972), we attempted to synthesize the holdings of those cases for application to the facts there before us. Mr. Justice POMEROY was impelled to go over much of the same ground more recently in *Borough of Green Tree v. Board of Property Assessments,* 459 Pa. 268, 328 A.2d 819 (1974).

decide whether a recent amendment to the General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. §5020-1 et seq. should apply to assessments in Allegheny County. The court below, by a judge of a judicial district other than Allegheny County, specially presiding, decided that the amendment applied, with the result, if this judgment stands, that the certification in 1977 of revised assessments for an approximate third of all real property in the county was nullified and substantial refunds of taxes levied in 1977 (and now 1978) required. The county commissioners have appealed.

The petitioners below have filed two motions to quash the appeal, both of which we conclude are without merit. One motion says the matter in controversy is moot because the County Board of Property Assessment, Appeals and Review, has, since this case began, taken action to abandon the triennial assessment by district method of assessment which was centrally questioned in this litigation. The matter is clearly far from moot since, as we have just observed, substantial refunds of taxes will be required to be made in upwards of 65 municipalities, not to mention the county. Further, the Board of Property Assessment may decide to reinstitute the triennial assessment by district method, if it should be held not to have been affected by the amendment relied on by the petitioners below. The petitioners' other motion to quash asserts that this appeal is interlocutory because an equity action involving the same legal issue but asking different relief was consolidated with this case for disposition below and was not finally disposed of by the court below.[2] The judgment entered below in this declaratory judgment case was clearly final. Actions, although consolidated for trial, retain

---

[2] The court below dismissed preliminary objections to the complaint in equity.

their separate identity. *See Goodrich-Amram Procedural Rules Service* §213(a)-13. The motions to quash will be dismissed.

The assessment, that is, valuation,[3] of persons, property, and other subjects of taxation for county, borough, township and school district purposes is performed in Pennsylvania in the counties. The counties of Pennsylvania are divided into nine classes from First Class, consisting of those having a population of more than 1,800,000 inhabitants to Eighth Class, consisting of those having a population of less than 20,000 inhabitants. Second Class counties are those having a population of more than 800,000 but less than 1,800,000 inhabitants. Allegheny is the only county of the Second Class.

The assessment process in the several counties is regulated first by a group of Acts, each tailored to the uses of a particular class or classes. Hence, the subject of assessment in First Class counties is regulated by the Act of June 27, 1939, P.L. 1199, *as amended*, 72 P.S. §5341.1 et seq.; in counties of the Second Class A and Third Class by the Act of June 26, 1931, P.L. 1379, *as amended*, 72 P.S. §5342 et seq.; and in counties of the Fourth to Eighth Class by The Fourth to Eighth Class County Assessment Law, Act of May 21, 1943, P.L. 571, *as amended*, 72 P.S. §5453.101 et

---

[3] The process is called that of assessment in the Acts of Assembly regulating it. Unfortunately and unnecessarily, the word assess is used in statutes and in the profession as a synonym for, or in conjunction with, the word levy, referring to the act of imposing a tax. For example, Section 2 of The Local Tax Enabling Act, Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. §6902, empowers political subdivisions to "levy, assess and collect" certain taxes. The leading case of *Lynch v. Owen J. Roberts School District*, 430 Pa. 461, 244 A.2d 1 (1968), was occasioned by a school district's interpretation of the word "assess" in The Local Tax Enabling Act as a grant to political subdivisions of the power to value subjects which could be taxed under the Act.

seq. The subject of assessment in Allegheny, the only county of the Second Class, is regulated in its particulars by the Act of June 21, 1939, P.L. 626, *as amended*, 72 P.S. §5452.1 et seq., which for the sake of convenience we will call the "Second Class County Assessment Law," although the General Assembly has not given it a name.

There is also in Pennsylvania the Act we first mentioned in this opinion, The General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. §5020-1 et seq. When enacted this Act was applicable in all counties of the Commonwealth.[4] This Act contains material not covered in all of the Acts particularly applicable to particular classes of counties. It is an extremely long statute of upwards of seventy sections divided into six Articles. The sixth section of the Act, 72 P.S. §5020-105 which appears in Article I—Preliminary Provisions, reads in part as follows:

> *All local acts of Assembly applying to particular counties* or political subdivisions thereof, and not heretofore repealed, *shall continue in force, and any provisions of this act inconsistent therewith shall not apply to the counties* or political subdivisions thereof *affected by such local laws.* The reenactment by this act of any act of Assembly, or part thereof, that has heretofore been repealed by any local act of Assembly, insofar as it applied to a particular county or political subdivision thereof, shall not revive or extend the provisions so reenacted to such county or political subdivision thereof.

---

[4] The General County Assessment Law was repealed in part as it applied to Fourth to Eighth Class counties by the comprehensive Fourth to Eighth Class County Assessment Law.

> *Whenever the provisions of this act are inconsistent with any law* relating to or *administered by any board of revision of taxes, or* board for the assessment and revision of taxes, *in counties of the* first, *second* or third *class, the laws* relating to and *administered by such boards,* and not included in this act, *shall apply, and the inconsistent provisions of this act shall not apply* to such classes of counties, but shall be in full force as to all other classes of counties, except as affected by local laws. (Emphasis supplied.)

Returning now to the enactment particularly relating to assessments in Allegheny County, the "Second Class County Assessment Law," we observe that Section 7, 72 P.S. §5452.7, empowers the Board of Property Assessment, Appeals and Review "to divide the county into three districts, as nearly equal as possible in subjects of taxation, and may provide that triennial assessments shall be made each year, but for only one of such districts during any one year." Pursuant to this authority, the Board of Property Assessment, Appeals and Review of Allegheny County, long before events leading to this lawsuit, divided the county into three districts, consisting of (1) the City of Pittsburgh, (2) a Southern District, and (3) a Northern District. As Section 7 provides, the Board each year made a triennial assessment for one of such districts. The calendar year 1976 was the turn of the Northern District and during that year the Board examined and revised the assessments in that district, increasing or decreasing them as it believed proper and adding properties or subjects of taxation as necessary.[5] These assessments made for

---

[5] Section 13 of the "Second Class County Assessment Law," 72 P.S. §5452.13, permits assessors to revise any assessment or valuation between triennial assessments. This provision has not escaped

the Northern District in the calendar year 1976 were to be effective for the calendar years 1977, 1978 and 1979.

On January 11, 1977, as required by Section 17.1 of the "Second Class County Assessment Law," 72 P.S. §5452.17a, the Board certified to the appropriate officials of the political subdivisions in the county the total value of real property, including that in the Northern District as revised by the triennial assessment of properties in that District made during the 1976 calendar year.

Prior to the amendment which became the occasion for this lawsuit, Section 402(a) of The General County Assessment Law, 72 P.S. §5020-402(a), provided that local assessors should value all objects of taxation for local purposes at the rates and prices for which the same would sell, that in arriving at such value the price at which any property may actually have been sold should be considered, and that such selling price should not be controlling but might be revised to accomplish equalization. To this unoffending and most reasonable provision, the General Assembly by Act No. 100, approved June 24, 1976 and declared to be effective immediately, appended the following sentence:

> Except in counties of the first class, no political subdivision shall levy real estate taxes on a county-wide revised assessment of real property until it has been completed for the entire county.

The petitioners below, the appellees here, being the owners of real property located in the Northern District whose assessments had been increased in the examination and revision of properties in the Northern District during the calendar year 1976, filed their

litigation. *May Department Stores Company v. Board of Property Assessment*, 8 Pa. Commonwealth Ct. 260, 303 A.2d 236 (1973).

petition for declaratory judgment requesting the court
to determine whether Act No. 100 was applicable to
Allegheny County; whether, if it was applicable, its
effective date was June 24, 1976 or some other date;
and finally, whether, if Act No. 100 was not applica-
ble to Allegheny County, the Board of Property As-
sessment, Appeals and Review has power acting alone
to discontinue the division of the county into three
districts. After an answer filed by the respondent
Board of Commissioners of Allegheny County, and
after a hearing, the specially attached trial judge en-
tered an order declaring that Act No. 100 was appli-
cable to Allegheny County and that its effective date
was June 24, 1976. If we understand the opinion ac-
companying the orders below, the trial judge believed
that the amendment to the General County Assess-
ment Law made by Act No. 100 was intended by the
General Assembly to be applicable to Allegheny Coun-
ty, either because it is later in date than the "Second
Class County Assessment Law" or because it is not
inconsistent with any provision of the "Second Class
County Assessment Law" or because the "Second
Class County Assessment Law" might be unconstitu-
tional if Act No. 100 did not apply.

The decision below that Act No. 100 is not incon-
sistent with the "Second Class County Assessment
Law" seems to be based on the conclusion that Act
No. 100 did not prevent the Board of Property As-
sessment from making triennial assessments by Dis-
tricts but that it only forbade the levy of real estate
taxes on revised District assessments of real proper-
ty until revisions had been completed for the entire
county. The trial judge indeed held that the Board
of Property Assessment might continue to revise
assessments by the triennial assessment by District
method but that it could not after June 24, 1976 law-
fully certify any revised assessments until the end

of the third year when revisions had been made in all three Districts. The result is that taxes which have been levied for 1977 and 1978 in the Northern District are in improper amounts and subject to substantial refunds. We believe that the General Assembly did not intend Act No. 100 to apply in Allegheny County and will reverse the judgment below declaring that it does.

As earlier noted, Section 7 of the "Second Class County Assessment Law" empowers the Allegheny County Board of Property Assessment to divide the county into three Districts and revise assessments in one of such Districts each year, effective for the next triennium. Later sections of the Act provide for giving notice of the new assessments by District, a right of appeal, and finally the certification of the total assessment of the properties to the several political subdivisions. Act No. 100 as applied by the court below would prohibit the certification of revised assessments for any single District and would require that all three Districts be certified two years later. This is clearly inconsistent with the practice allowed by the "Second Class County Assessment Law." Being a provision of The General County Assessment Law inconsistent with a provision of a local Act, it is, by the explicit provisions of the former hereinbefore quoted, of no effect.

More fundamentally, Act No. 100 does not apply to Allegheny County by its express terms. It provides that "no political subdivision shall levy real estate taxes on a county-wide revised assessment of real property until it has been completed for the entire county." The Act speaks of a levy on a county-wide revised assessment; Allegheny County was not in 1976 engaged in making a county-wide revised assessment; it makes, and was then engaged in making, a District-wide revised assessment.

The history of assessments in Pennsylvania, which is of common knowledge to persons active in the field, teaches that the General Assembly in its amendment of The General County Assessment Law by Act No. 100 in June of 1976 was speaking to something quite other than the triennial assessments by district authorized by the "Second Class County Assessment Law" and practiced for many years in Allegheny County. Philadelphia County, Allegheny County and doubtless some third class counties have had sophisticated methods of assessing real property and of making and maintaining the records of assessments for many years. Fourth to Eighth Class Counties, far less populous and enjoying much lower millage rates, often maintained inadequate, antiquated and in many cases quite inequitably applied records of assessments. When, in the wake of the Second World War the populations of these counties burgeoned and the costs of municipal services, especially of public education, increased geometrically, the inequities and inadequacies of the assessment systems became manifest and, more importantly, matters of great public concern. As a result, the General Assembly in 1952 required Fourth to Eighth Class counties to establish permanent records systems consisting of tax maps, property record cards, property owners' indexes, and thereafter to assess properties by the use of these materials. These changes were effected by the Act of January 18, 1952, P.L. (1951) P.L. 2094, adding Sections 306 and 307 and extensively amending Section 602 of The Fourth to Eighth Class County Assessment Law, 72 P.S. §§5453.306, 5453.307 and 72 P.S. §5453.602. These changes required Fourth to Eighth Class counties to enter into contracts with commercial enterprises able to do the mapping, the preparation of the record cards and the systematized valuation of real property. These programs took

years, often longer than the five years allowed by the statute. Since this process was ongoing and the need for tax revenues was immediately pressing, some counties could not resist the temptation to use the revised assessments completed in some parts of the county before the whole was completed. *See Rochester and Pittsburgh Coal Company v. Indiana County Board of Assessment*, 438 Pa. 506, 266 A.2d 78 (1970). Act No. 100 was intended by the General Assembly to discourage those counties engaged in county-wide reassessment programs from yielding to the temptation to implement the new system piecemeal. Our view in this respect is supported by the fact that Section 602 of The Fourth to Eighth Class County Assessment Law, 72 P.S. §5453.602, was, on the same day that Act No. 100 was passed, also amended by the addition of a prohibition of the levy of real estate taxes on a county-wide revised assessment until it had been completed for the entire county. No such amendment was made, or it appears was ever suggested to be made, to the "Second Class County Assessment Law."

We emphasize that no constitutional question is raised in this proceedings. The sole issue is one of law, that is, whether the General Assembly intended that Act No. 100 apply to Allegheny County with the effect of proscribing the district-triennial assessment method authorized by the "Second Class County Assessment Law" and practiced in Allegheny County for many years. We hold that it was not so intended. However, the trial judge expressed as a reason for a conclusion that Act No. 100 should apply his belief that the constitutionality of the Allegheny County assessment system would be enhanced by such action. We see nothing constitutionally wrong with assessment by Districts, provided that the valuations of objects of every tax levied on property so valued bear

the same, that is a uniform, ratio to market value. Clearly, so long as the boundaries of political subdivisions are coterminus with those of their assessment District or such subdivisions are entirely within the assessment District, no constitutional problem arises with respect to the taxes levied by these political subdivisions. There might, however, be a problem with the county tax which is levied on the basis of assessments in all three assessment Districts if the valuation of properties in the several Districts were at different ratios of market value. This was the issue sought to be litigated in *Borough of Green Tree v. Board of Property Assessment,* 459 Pa. 268, 328 A. 2d 819 (1974), but which was not decided because the trial court and Commonwealth Court had decided against the taxpayer on jurisdictional grounds. The Supreme Court remanded for proceedings on the merits but nothing more is known on the matter. If, as the Board of Property Assessment of Allegheny County said in a pleading in *Borough of Green Tree,* a uniform common ratio of assessment to market value has been applied throughout all three assessment Districts of Allegheny County, there would be no lack of uniformity. Furthermore, the Supreme Court has approved evidence of a common level of ratio of assessed value to market value throughout Allegheny County at 44% for the triennium 1963, 1964 and 1965, (*Fifth and Wood Realty Corp. Tax Assessment Case,* 426 Pa. 577, 235 A.2d 798 (1967)); at 41.4% for the triennium 1960, 1961 and 1962 (*F. W. Woolworth Co. Tax Assessment Case,* 426 Pa. 583, 235 A.2d 793 (1967)); and, in the absence of a contest, at 50% for the triennium 1965, 1966 and 1967 (*May Department Stores Co. v. Allegheny County Board of Property Assessment,* 441 Pa. 556, 272 A.2d 862 (1971)). But, we repeat, no constitutional issue is presented in this case and constitutional considera-

tions provided no basis for preferring for application an inexplicit amendment to a general statute over an explicit provision of a local Act.

Order reversed.

ORDER

AND Now, this 26th day of April, 1978, it is Ordered that the appellees' motions to quash be and they hereby are denied, and that the Order of the court below made August 25, 1977 be and the same hereby is reversed.