410 A.2d 1238

**J. Donald McKINNEY, Samuel Land Company, Wilco Corporation, John Ricciuti, Inc., Appellants,**

**v.**

**The BOARD OF COMMISSIONERS OF ALLEGHENY COUNTY, Pennsylvania, Appellee.**

Supreme Court of Pennsylvania.

Argued March 12, 1979.

Decided Feb. 1, 1980.

T. Robert Brennan, Harvey E. Robins, John Daley, Brennan, Robins & Daley, Pittsburgh, for appellants.

Alexander J. Jaffurs, County Sol., Thomas M. Rutter, Jr., Second Asst. Co. Sol., Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, MANDERINO, NIX and LARSEN, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.*

Pursuant to the "Uniform Declaratory Judgment Act," Act of June 18, 1923, P.L. 840, § 1, *as amended,* 12 P.S. §§ 831 *et seq.,* a group of owners of realty and taxpayers of Allegheny County filed actions in the Court of Common Pleas seeking a declaratory judgment determining the applicability to Allegheny County of Act 100, a 1976 amendment to section 402 of the General County Assessment Law [hereinafter: Act 100][1] which requires completion of a county-wide revised assessment of real property before taxes may be levied on any revised assessment of real property located therein "[e]xcept in counties of the first class." The ac-

---

* This case was reassigned to the writer on November 16, 1979.

1. Act of May 22, 1933, P.L. 853, art IV, § 402, *as amended,* Act of June 24, 1976, P.L. 422, No. 100, § 1, 72 P.S. § 5020–402(a) (Supp. 1979–80) [hereinafter: General County Assessment Law].

tions [2] were consolidated for hearing, and later the Court of Common Pleas, per a judge from another judicial district specially presiding, entered an adjudication and order declaring that Act 100 applies to Allegheny County and precluding the levying of taxes for the years 1977, 1978 and 1979 based on a 1976 revised assessment of real property in the northern triennial assessment district of Allegheny County until the assessment of real property in the entire county was completed. Appeals were filed in the Commonwealth Court and, subsequently, that court entered an unanimous order and opinion reversing the order of the Court of Common Pleas.[3] Because the issue is one of first impression and of great importance, this Court granted allocatur.

**2.** The taxpayers also filed a class action in equity related to the actions in declaratory judgment seeking to enjoin the taxing authorities from collecting taxes on a 1976 revised assessment of real property in the northern triennial assessment district of Allegheny County for the years 1977, 1978 and 1979, and to have refunded to them taxes collected on these revised assessments. See *McKinney v. Allegheny County*, No. G.D. 77–2104 (Com. Pleas August 25, 1977).

**3.** The taxpayers filed two motions to quash the appeals filed in the Commonwealth Court which were denied. The motions maintained that: (1) the issue was moot since the Allegheny County Board of Property Assessment, Appeals and Review has, since the commencement of the action, discontinued the triennial assessment by district method; and, (2) the appeals were premature.

In denying the motions to quash, Judge Rogers said:

"The petitioners below have filed two motions to quash the appeal, both of which we conclude are without merit. One motion says the matter in controversy is moot because the County Board of Property Assessment, Appeals and Review, has, since this case began, taken action to abandon the triennial assessment by district method of assessment which was centrally questioned in this litigation. The matter is clearly far from moot since, as we have just observed, substantial refunds of taxes will be required to be made in upwards of 65 municipalities, not to mention the county. Further, the Board of Property Assessment may decide to reinstitute the triennial assessment by district method, if it should be held not to have been affected by the amendment relied on by the petitioners below. The petitioners' other motion to quash asserts that this appeal is interlocutory because an equity action involving the same legal issue but asking different relief was consolidated with this case for disposition below and was not finally disposed of by the court below. The judgment entered below in this declaratory judgment case was clearly final. Actions, although consolidated for trial, retain their separate identity. See Goodrich-Amram Pro-

Allegheny County is a county of the second class.[4] Authority for triennial district assessments of real property in counties of the second class is contained in provisions of two statutes, *viz.*, the General County Assessment Law, 72 P.S. § 5020–401(b),[5] and the Second Class County Assessment Law, Act of June 21, 1939, P.L. 626, § 7, *as amended*, Act of November 9, 1965, P.L. 668, § 1, 72 P.S. § 5452.7 [hereinafter: Second Class County Assessment Law].[6] In accordance with section 5452.7, the Board of Property Assessment, Appeals and Review divided Allegheny County, a county of the second class, into three districts: (1) the northern district; (2) the city of Pittsburgh; and, (3) the southern

cedural Rules Service § 213(a)–13. *The motions to quash will be dismissed.*" [Footnote omitted.]
*McKinney v. Bd. of Comm'rs*, 35 Pa.Cmwlth. 91, 93–94, 385 A.2d 596, 597 (1978). We agree the motions were properly denied.

4. The counties of the Commonwealth are divided into nine classes, according to population. Allegheny is currently the only county of the second class.

5. Authority for triennial assessments in counties of the second and third through eighth class is found in section 401(c), (d), and (e) of the General County Assessment Law. The General County Assessment Law authorizes only annual assessments for counties of the first class. Section 401(a).

6. Section 5452.7 provides as follows:
"The board may divide the county into three districts, as nearly equal as possible in subjects of taxation, and may provide that triennial assessments shall be made each year, but for only one of such three districts during any one year. In order to inaugurate such system, a triennial assessment may be made for the first district during the year immediately following one in which a triennial assessment was made for the county as a whole, and a triennial assessment may be made for the second district during the second year following one in which a triennial assessment was made for the county as a whole. Whenever the board has divided the county into districts and provided for triennial assessments in each of such triennial districts as herein set forth, the board, in making and supervising assessments and valuations of property in such triennial districts shall make such assessments and valuations at a level uniform within such triennial districts but not in excess of the actual market value of any property assessed and valued and such assessments shall be deemed to be in compliance with the requirements of uniformity of taxation on the same class of subjects."

district. The Board authorized assessments to be made each year in one of the districts to be effective for a triennium.

Prior to June 24, 1976, section 402 of the General County Assessment Law, 72 P.S. § 5020–402, provided standards for the valuation of property in counties utilizing the triennial method of assessment. On June 24, 1976, the legislature amended section 402 to read as follows:

"(a) It shall be the duty of the several elected and appointed assessors, and, in townships of the first class, of the assessors, assistant township assessors and assistant triennial assessors, to assess, rate and value all objects of taxation, whether for county, city, township, town, school, institution district, poor or borough purposes, according to the actual value thereof, and at such rates and prices for which the same would separately bona fide sell. In arriving at such value the price at which any property may actually have been sold shall be considered but shall not be controlling. Instead such selling price, estimated or actual, shall be subject to revision by increase or decrease to accomplish equalization with other similar property within the taxing district. *Except in counties of the first class, no political subdivision shall levy real estate taxes on a county-wide revised assessment of real property until it has been completed for the entire county.*" [Emphasis added to indicate Act 100, the 1976 amendment.]

During 1976, real property in the northern district of Allegheny County was assessed in accordance with the previously established schedule for making triennial district assessments. On June 17, 1977, acting pursuant to the Second Class County Assessment Law, 72 P.S. § 5452.17a, the assessments, as revised in 1976 for the northern district, were certified to the political subdivisions of Allegheny County for their use in levying taxes for the calendar years 1977, 1978 and 1979. In 1977, taxes on real property located in the northern district were levied on the basis of the 1976 revised assessments. The other two districts were taxed in 1977 on the basis of assessments determined in 1975 and 1974. Thereafter, appellants instituted these actions claim-

ing section 402 of the General County Assessment Law was violated by tax levies made in 1977 on increased assessments of property in the northern district. As noted before, the trial court agreed with the appellants; however, the Commonwealth Court did not. We conclude the Commonwealth Court is correct.

Allegheny County is the only county now authorized by statute to assess property on a district-wide, triennial assessment basis.[7] All other counties, including counties of the first class,[8] are required to assess property on an annual basis. Although first class and third class counties are required by statute to divide such counties into assessment districts, see Act of June 27, 1939, P.L. 1199, § 5, 72 P.S. § 5341.5 and Act of June 26, 1931, P.L. 1379, § 4, 72 P.S. § 5345, respectively, these and all other counties, except second class counties, are required to make annual assessments.[9] Therefore, all counties, except Allegheny County, in effect, assess property county-wide on an annual basis.

■ Act 100, by its terms, applies to county-wide reassessments. It directs that taxes may only be levied on such assessments when the assessments have been completed for the entire county. By its terms, Act 100 applies to all counties except "counties of the first class." The Commonwealth Court did not consider this introductory phrase when it held that Act 100 did not apply to Allegheny County. See Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1921(b) (Supp.1978–79). However, even after considering this introductory phrase, we hold that Act 100 does not apply to

7. Although the General County Assessment Law authorized triennial assessments for all counties other than those of the first class, see 72 P.S. § 5020–401, the making of triennial assessments was abolished for counties of the third class by the Act of May 26, 1949, P.L. 1848, § 1, 72 P.S. § 5344 and for counties of the fourth to eighth class by the Act of May 21, 1943, P.L. 571, art. VI, § 601, 72 P.S. § 5453.601.

8. Counties of the first class are required to make annual assessments. Philadelphia County is now the only first class county. Act of June 27, 1939, P.L. 1199, § 7, 72 P.S. § 5341.7.

9. See n. 7 and n. 8, supra.

Allegheny County because Allegheny County is permitted to employ a district-wide, triennial assessment system.

 Initially, we are supported in this conclusion because to apply Act 100 to Allegheny County, under the district-wide, triennial assessment system, would lead to a result not intended by the legislature. In ascertaining the intent of the General Assembly, we are to presume that it does not intend a result that "is absurd, impossible of execution or unreasonable." Statutory Construction Act of 1972, 1 Pa.C. S.A. § 1922(1) (Supp.1978–79). Yet, the application of Act 100 to a county using a triennial, district-wide assessment system would result in an unequal tax burden on property owners within the county in any given year. Under Act 100, taxes could not be levied on assessments made in the first district in year one until assessments were completed for the other two districts in Allegheny County in years two and three. Under the existing unstable economic climate and increasing inflation, this would produce a grossly unfair situation. Property owners in the first district assessed in year one would pay taxes based on that assessment only after assessments had been made on *increased* real estate values in the other two districts in Allegheny County in years two and three. Thus, property owners assessed in year one would pay taxes on assessments based on earlier and lower real estate values for three years,[10] while those assessed in years two and three would pay taxes on assessments based on higher real estate values for three years, respectively. This result is clearly unreasonable.

Our conclusion is further supported by the resolution of an inconsistency between the General County Assessment Law and the Second Class County Assessment Law. Section 105 of the General County Assessment Law, 72 P.S. § 5020.105 provides in pertinent part:

10. The Second Class County Assessment Law, 72 P.S. § 5452.10 provides that the revised assessment "shall stand as the valuations for the assessments of all county and institution district taxes and for such other political subdivisions as levy their taxes on county assessments and valuations in the county, until the next triennial assessment . . . ."

"All local acts of Assembly applying to particular counties or political subdivisions thereof, and not heretofore repealed, shall continue in force, and any provisions of this act inconsistent therewith shall not apply to the counties or political subdivisions thereof affected by such local laws. . . .

"Whenever the provisions of this act are inconsistent with any law relating to or administered by any board of revision of taxes, or board for the assessment and revision of taxes, in counties of the first, second or third class, the laws relating to and administered by such boards, and not included in this act, shall apply, and the inconsistent provisions of this act shall not apply to such classes of counties, but shall be in full force as to all other classes of counties, except as affected by local laws."

Thus, a provision of the Second Class County Assessment Law supersedes an inconsistent provision of the General County Assessment Law.

■ As noted earlier, sections 7 and 10 of the Second Class County Assessment Law, 72 P.S. §§ 5452.7 and 5452.10 permit Allegheny County, through its Board of Property Assessment, Appeals and Review, to divide the county into three districts and make assessments in one of such districts each year, effective for the next triennium. Other sections of the Second Class County Assessment Law provide for giving notice of the new district-wide assessments, a right of appeal and finally the certification of the revised assessment to political subdivisions. Second Class County Assessment Law, 72 P.S. §§ 5452.10, 5452.11, 5452.16 and 5452.17a. The Commonwealth Court held that:

"Act No. 100 as applied by the court below would prohibit the certification of revised assessments for any single District and would require that all three Districts be certified two years later. This is clearly inconsistent with the practice allowed by the 'Second Class County Assessment Law.' "

*McKinney v. Board of Commissioners*, 35 Pa.Cmwlth. 91, 99, 385 A.2d 596, 600 (1978). We agree; however, we wish to

make clear that Act 100 is only inconsistent with the Second Class County Assessment Law so long as Allegheny County employs a district-wide, triennial assessment system. Section 7 of the Second Class County Assessment Law, 72 P.S. § 5452.7 permits, but does not mandate, the use of district-wide, triennial assessments. It states that: "[t]he board *may* divide the county into three districts . . . and *may* provide that triennial assessments shall be made each year, but for only one of such three districts during any one year." [Emphasis added.]

Furthermore, whenever general and specific provisions are in conflict, the provisions should be construed, if possible, to give effect to both. Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1933 (Supp.1978–79). Instantly, Act 100 is only inconsistent when Allegheny County, a second class county, permissively employs a district-wide, triennial assessment system. Act 100 can properly be applied to second class counties which do *not* employ such a system. Thus, should Allegheny County stop using district-wide, triennial assessments, Act 100 could, thereafter, be properly applied.

Order affirmed.

MANDERINO, J., did not participate in the decision of this case.

ROBERTS, J., filed a dissenting opinion.

ROBERTS, Justice, dissenting.

Today the majority holds that the Legislature did not intend to apply Act 100, Act of May 22, 1933, P.L. 853, art. IV, § 402, as amended, 72 P.S. § 5020–402(a) (Supp.1979–80) to Allegheny County because that county employs triennial assessments. I must dissent. The Legislature could not have been more explicit in its statutory mandate that second class counties like Allegheny are subject to the Act.

Since 1933, counties of the second class have been authorized by the Legislature to use triennial assessments. 72 P.S. § 5020–401(b). When the Legislature enacted Act 100

in 1976 it provided that Act 100 applies to all counties "[e]xcept . . . counties of the first class . . . ." Because the Legislature has directed the courts of this Commonwealth to follow the "words of a statute [when they] are clear and free from all ambiguity . . . ," 1 Pa.C.S.A. § 1921(b), we are compelled to apply Act 100 to Allegheny County.

The majority sets forth three unpersuasive reasons for disregarding the express language of the statute. First it states that application of Act 100 to a county using triennial assessments "would produce a grossly unfair situation" in the present inflationary economy. This conclusion is premised upon a fundamental misunderstanding of the operation of triennial assessments. If we assume, as does the majority, that property values are continually increasing, then triennial assessments (with or without Act 100) could result in higher tax burdens for similarly situated property owners who are assessed in different years. Such a result would, of course, violate the constitutional requirement of uniform taxation. See Pa.Const. art. 8, § 1. But the Legislature, well aware of this difficulty, in 1975 amended the General County Assessment Law, 72 P.S. § 5020–402(a) (Supp.1979–80) to authorize assessors to adjust assessments to reflect economic changes. See also 1 Pa.C.S.A. § 1922(3). Thus, equity and tax uniformity can be preserved. So long as triennial assessments incorporate appropriate economic adjustments, the application of Act 100 will in no way upset the equitable and uniform tax burden upon county taxpayers.

The majority next suggests that Act 100, by its own terms, applies only to "county-wide" assessments. Triennial assessments are "district-wide," suggests the majority, and therefore beyond the ambit of Act 100. I cannot agree. A county using triennial assessments assesses all taxable property in the county. Though the period of assessment is three years, rather than one, there is no dispute that the assessment is county-wide.

The majority's third objection is that Act 100 is inconsistent with Second Class County Law dealing with triennial assessments, and therefore superseded by it. However, the relevant Second Class County Law and the majority opinion disclose no intrinsic inconsistency. See generally 1 Pa.C.S.A. § 1932(b).

Accordingly, I would reverse the order of the Commonwealth Court and reinstate the order of the trial court holding that Act 100 applies.