901 A.2d 1003

**Thomas and Katherine KOWENHOVEN, Robert and Michelle Dewitt, and Daniel and Carol Holtgraver, Appellants,**

**v.**

**The COUNTY OF ALLEGHENY and the Board of Assessment of Allegheny County, Appellees.**

Supreme Court of Pennsylvania.

Argued Sept. 12, 2005.

Decided July 18, 2006.

546

John M. Silvestri, Esq., for Thomas Kowenhoven, et al.

Michael Henry Wojcik, Esq., Caroline P. Liebenguth, Esq., for Allegheny County.

Isobel Storch, Esq., Pittsburgh, for Allegheny County Board of Assessment.

CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN, and BAER, JJ.

## *OPINION*

Justice SAYLOR.

The primary issue in this appeal is whether equity jurisdiction lies in the common pleas court to address a taxpayer's claim that the manner in which the county adjudicates tax assessment appeals violates constitutional due process guarantees.

## I.

This action was commenced when Appellants filed a class-action complaint in the court of common pleas, invoking the court's equitable jurisdiction and naming as defendants Allegheny County (the "County"), as well as its Board of Property Assessment Appeals and Review (the "Board"). In the complaint, Appellants challenged certain aspects of the Board's procedures for disposing of tax assessment appeals, and sought, *inter alia,* declaratory and injunctive relief.

Within the County, tax assessment appeals are conducted pursuant to the Second Class County Assessment Law, the General County Assessment Law,[1] and the Allegheny County Administrative Code. Pursuant to the latter, the Board designates a hearing officer to conduct hearings, issue findings of fact and conclusions of law, and make a recommendation to the full Board. *See* Allegheny County Administrative Code § 5–207.07(E). In the event that the recommendation is not accepted by a majority, the Board's rules require it to review any recordings and all evidence supplied at the hearing or through post-hearing submissions, and the Board's decision must be based upon valuation methodologies consistent with the standards of nationally recognized assessment and appraisal industry organizations. *See* Board Rule No. IV, § 5.

1. Act of June 21, 1939, P.L. 626 (as amended, 72 P.S. §§ 5452.1–5452.20), and Act of May 22, 1933, P.L. 853 (as amended, 72 P.S. §§ 5020–1–5020–602), respectively. The General County Assessment Law applies to the extent it is not inconsistent with the Second Class County Assessment Law. *See* 72 P.S. §§ 5020–105, 5452.20; *McKinney v. Board of Comm'rs of Allegheny County,* 488 Pa. 86, 94, 410 A.2d 1238, 1242 (1980).

According to the complaint, in addition to its rules and the County Administrative Code, in April 2002 the Board issued a memo to hearing officers and case reviewers concerning practices and procedures,[2] advising, in relevant part:

> When making recommendations, Hearing Officers and Case Reviewers are permitted to accept or discount evidence presented at a hearing based on their professional valuation judgment, knowledge of the area and/or verification of date [sic] in SMDA [Sabre Market Data Analysis].
>
> Hearing Officers and Case Reviewers are *not* to reappraise the property or submit post-hearing evidence. A Hearing Officer or Case Reviewer who has personal knowledge of an area or more suitable sales comparables to those introduced at a hearing may supply this information for the Board's consideration. . . .
>
>           \* \* \*
>
> Every party deserves a well reasoned recommendation. Hearing Officers are encouraged to carefully consider the evidence. If the subject property is located in a market area the Hearing Officer is not familiar with, scrutinizing the marketplace on SMDA is helpful to identify anomalies. . . .
>
>           \* \* \*
>
> Assessments reflect values as of January 1 of the year for which the assessment is certified. Hearing Officers shall use their professional judgment and knowledge of the area in determining whether appreciation between 2001 and 2002 is applicable and the amount of appreciation that is appropriate. (2% is only a rule of thumb). . . .

Complaint at 5–6 (emphasis and bracketed text in original).[3]

Further, the complaint alleged that Appellants Thomas and

---

**2.** A case reviewer examines a hearing officer's report and supporting documentation to assure that the recommendation is consistent with generally accepted professional valuation methodologies and the Board's guidelines.

**3.** The memo was not attached to the complaint, nor is it otherwise contained in the record (although portions of it were quoted in the

Katherine Kowenhoven, Robert and Michele Dewitt, and Daniel and Carol Holtgraver each own a home located in the County. Each couple filed a timely appeal of their 2002 assessment which was determined by the Board following a hearing before a hearing officer. With respect to the Kowenhovens and Holtgravers, the hearing officer recommended a reduction in their 2002 assessment, but the Board ultimately issued decisions maintaining the original assessments in place with no reduction. In both of these matters, post-it notes were affixed to the hearing officer's reports some time after the hearing and while the matters were pending before the Board, indicating disagreement with the hearing officer's recommendations and denoting a basis not introduced into evidence to justify maintaining the original assessments and thereby departing upward from the hearing officer's recommendation. As to Appellants Robert and Michelle Dewitt, the hearing officer recommended an increase in assessment, utilizing a three-percent appreciation rate, with which the Board agreed.

In light of the above, Appellants argued that the County's assessment practices improperly allowed the Board to consider evidence obtained outside of the record, thereby violating Appellants' due process rights. Appellants also averred that the injection of post-hearing evidence in these and, it is believed, hundreds of other cases, was performed without notice to the taxpayer. Therefore, Appellants asked that the Board be directed to re-decide all cases in which it can be ascertained from the hearing files that evidence outside of the hearing was submitted for consideration as to tax years 2001 or 2002. Appellants also requested relief under Section 1983 of the federal Civil Rights Act of 1871 in the form of unspecified damages, fees, and costs. *See* 42 U.S.C. § 1983.[4] Appel-

allegations of the complaint). Moreover, because the case was dismissed on preliminary objections, factual development has not occurred.

4. Section 1983 authorizes, *inter alia,* actions against local governmental units premised upon a deprivation of federal rights under color of state law. *See generally Monell v. Department of Soc. Servs. of City of N.Y.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). The

lees filed preliminary objections, asserting that Appellants could appeal the Board's assessment decisions to the court of common pleas for a *de novo* hearing, which, in Appellees' view, would constitute an adequate remedy at law so as to preclude injunctive and declaratory relief in the present matter.

By opinion and order dated July 10, 2003, the trial court sustained the preliminary objections and dismissed the complaint, reasoning that, while a taxpayer may bring an equity action to mount a facial challenge to the constitutionality of a tax statute, such a proceeding may not be maintained to test the legality or constitutionality of the manner in which the statute is administered. *See* Tr. Ct. Op. at 5 (citing *Borough of Green Tree v. Board of Prop. Assessments, Appeals & Review of Allegheny County,* 459 Pa. 268, 328 A.2d 819 (1974) (plurality)). The trial court interpreted the allegations of the complaint as primarily raising an issue concerning whether the Board had followed its own rules in disposing of Appellants' assessment grievances, noting:

> There have been thousands of appeals filed with the Assessment Board from 2001 and 2002 assessments. If the courts became involved every time the procedures of the Assessment Board are not followed, the courts—rather than the Board of Assessment—would be operating the assessment program.

Trial Court Op. at 4. Apparently on this understanding of the complaint, the trial court rejected the state law equity claim because of the availability of an adequate statutory remedy, namely, a *de novo* appeal to the common pleas court. The court also dismissed Appellants' Section 1983 claim based upon *Murtagh v. County of Berks,* 715 A.2d 548, 551 (Pa. Cmwlth.1998) (*en banc*), which held that Section 1983 does not provide a basis for state courts to award damages when an adequate legal remedy exists.

act also provides for a discretionary award of attorney's fees to the prevailing party. *See* 42 U.S.C. § 1988(b); *National Private Truck Council, Inc. v. Oklahoma Tax Comm'n,* 515 U.S. 582, 584 n. 2, 115 S.Ct. 2351, 2353 n. 2, 132 L.Ed.2d 509 (1995).

A divided Commonwealth Court affirmed. *See Kowenhoven v. County of Allegheny,* 847 A.2d 172 (Pa.Cmwlth.2004) (*en banc*). The majority proceeded on the understanding that Appellants' challenge also—and centrally—included a contention that the methodology generally employed by the Board pursuant to the above-quoted practices and procedures memo was fatally flawed on due process grounds. In thus addressing Appellants' constitutional claim, the Commonwealth Court majority acknowledged that, in *Ward v. Village of Monroeville, Ohio,* 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972), the United States Supreme Court held that due process is required at every level of judicial and quasi-judicial proceedings. In *Ward,* the statute at issue permitted an interested executive to sit as a judge and conduct a hearing at the first level of judicial proceedings. *See id.* at 57–58, 93 S.Ct. at 82. While a party had the right to an appeal *de novo* to a trial court, the Supreme Court concluded that the statutory procedure could not be deemed constitutionally acceptable merely because the state eventually offered a defendant an impartial adjudication. *See id.* at 61–62, 93 S.Ct. at 83–84.

The Commonwealth Court majority distinguished *Ward* from Appellants' situation, however, on two principal bases. First, it emphasized that the County Administrative Code does not affirmatively permit a hearing officer or the Board to consider extra-record evidence; thus, although stating that the Board's procedure "appears to fly in the face of due process notions," *Kowenhoven,* 847 A.2d at 174, and that it "inject[s] an improper element into the process of adjudication," *id.* at 176, the majority reasoned that the present challenge, unlike in *Ward,* is to the application of the statute rather than the statute itself. *See id.* at 175–76. Second, the majority noted that the procedural defect at issue in *Ward* was that the magistrate retained a financial interest in the outcome of the case, whereas the present dispute concerns the assertion that the Board, as a matter of policy, improperly considers extra-record evidence in the adjudication process. As these claims implicate two distinct aspects of procedural due process, the Commonwealth Court majority considered

the Supreme Court's reasoning in *Ward* inapplicable to the present case. *See id.* at 175–76. Hence, and in light of the subsequent *de novo* review statutorily afforded to Appellants, the majority held that equitable relief was unavailable. Finally, concerning the civil rights claim under Section 1983, the Commonwealth Court majority explained that such challenge may not be brought without first exhausting administrative remedies, and Appellants may not maintain a claim under Section 1983 where, as here, the state's administrative process provides an adequate remedy. *See id.* at 176.

Judge Friedman filed a responsive opinion in which she agreed, as an initial matter, that the trial court had properly dismissed Appellants' Section 1983 cause of action. However, she declined to join the majority's disposition of the other claims. She noted that Appellants' complaint was in the form of a class action lawsuit, alleging that hundreds of real estate tax assessment decisions were tainted by the receipt of non-record evidence; she observed, in this regard, that, to defeat equity jurisdiction, the legal remedy provided must be "full, perfect and complete," and that, where relying solely on the statutory appeal mechanism would result in a "multiplicity of duplicative lawsuits and, in contrast, an action in equity would provide a tidy global resolution," the legal remedy should be deemed inadequate. *Pentlong Corp. v. GLS Capital, Inc.,* 573 Pa. 34, 43–44, 820 A.2d 1240, 1245–46 (2003). She also suggested that the majority's denial of equitable relief on the basis that Appellants have only advanced an as-applied challenged to the taxing statute is at odds with the general rule as expressed by this Court in *Borough of Green Tree,* which focuses on whether a substantial constitutional question is raised and an adequate statutory remedy is lacking.[5] Finally, Judge Friedman indicated that, because agency expertise is unnecessary to resolve the constitutional question of whether the Board's alleged extra-record evidence policy violates due

5. Judge Friedman pointed out, as well, that, in a *de novo* appeal, the taxing authority's valuation, which presently would allegedly be based upon improperly introduced evidence, is entitled to presumptive validity, and that the burden would be placed on the taxpayers to rebut the extra-record evidence. *See id.* at 177–78 n. 1.

process, an important rationale for requiring administrative exhaustion is absent. *See Kowenhoven*, 847 A.2d at 176–80 (Friedman, J., concurring and dissenting).

In their presentations to this Court, the parties primarily differ concerning whether the statutory appeal route afforded to Appellants is adequate to protect their interests. Appellants focus on the asserted initial denial of rights and invoke the United States Supreme Court's guiding precept in *Ward* that due process must be observed at the initial stage of adjudication, as well as Pennsylvania decisional law to the effect that such process necessarily includes the ability to cross-examine adverse witnesses and otherwise challenge evidence. *See* Brief for Appellants at 19–27. . Appellees do not dispute that the introduction of *ex parte* evidence would be improper, but emphasize that, in an appeal *de novo*, the presumptive validity of the Board's assessment falls away as soon as the property owner introduces any evidence tending to undermine its accuracy, with the result that the appeal "become[s] an absolute remedy to any improprieties at the administrative level since the improper evidence, if any, is removed from the proceeding *ab initio*." Brief for Appellees at 7.[6] They additionally maintain that *Borough of Green Tree* established the principle, followed in *Jordan v. Fayette County Bd. of Assessment Appeals*, 782 A.2d 642 (Pa.Cmwlth.2001), that class action equity jurisdiction only lies in tax appeal cases where the plaintiffs are challenging the taxing statute itself, rather than the assessment methods employed pursuant to the statute.

6. Appellees also argue that there is no factual support for Appellants' contention that the Board's decisions as to them were based upon *ex parte* evidence. As discussed, however, the complaint was dismissed at the preliminary objections stage, and thus, no factual record relating to its allegations has been developed. *See supra* note 3.

Separately, Appellees state that the parties have settled their administrative appeals in the trial court. *See* Brief for Appellees at 3, 5, 7–8. However, there is no information in the record concerning these alleged developments, and Appellees do not argue that Appellants' claims are moot or that their representative status in the class is negated. Rather, Appellees refer to the alleged settlements as support for their position that the statutory appeal route provides an adequate legal remedy, a topic analyzed below.

## II.

■ As a preliminary matter, we agree with the Commonwealth Court's understanding of the nature of the controversy, as directed to the procedures implemented by the Board affecting potentially hundreds of assessment appeals. This aspect of the dispute seems reasonably clear from a review of the "Class Action Allegations" section of the complaint, *see* Complaint at ¶¶ 58–64; Pa.R.C.P. 1704, which contains assertions regarding the Board's general practices that pertain broadly to a potentially large set of property owners. These averments, moreover, which challenge the Board's alleged policy of utilizing extra-record evidence, subsume the particular instances of impropriety that Appellants contend occurred in their cases, *see id.* at ¶¶ 24, 38, 55, and are the focus of the relief sought. Thus, we will proceed to determine whether such averments remove the present dispute from the scope of the rule requiring adherence to the administrative appeal route provided by statute. For purposes of our present review—that is, to determine whether the preliminary objections were properly sustained—we view the case as a class action, as no order has been issued denying such status. *See* Pa.R.C.P. 1701(a) & official comment; *Alessandro v. State Farm Mut. Auto. Ins. Co.*, 487 Pa. 274, 279 n. 9, 409 A.2d 347, 350 n. 9 (1979); *Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 229, 348 A.2d 734, 736 (1975) (recognizing that, upon the filing of a class action complaint, "[t]he class is in the action until properly excluded"); *Ravitch v. Pricewaterhouse*, 793 A.2d 939, 943 (Pa.Super.2002). Because the question of the constitutionality of the Board's alleged procedures, like the issue of whether sustaining Appellees' preliminary objections was appropriate, is one of law, our review is plenary. *See Theodore v. Delaware Valley Sch. Dist.*, 575 Pa. 321, 333, 836 A.2d 76, 83 (2003).

■ Due process principles apply to quasi-judicial or administrative proceedings, *see generally Khan v. State Bd. of Auctioneer Exam'rs*, 577 Pa. 166, 842 A.2d 936 (2004), and require an opportunity, *inter alia*, to hear the evidence adduced by the opposing party, cross-examine witnesses, intro-

duce evidence on one's own behalf, and present argument. *See Callahan v. Pennsylvania State Police*, 494 Pa. 461, 465, 431 A.2d 946, 948 (1981). Nevertheless, Appellees are correct in stating that *Borough of Green Tree* suggests that the presence of equity jurisdiction correlates more closely with a facial challenge to the constitutional validity of the taxing statute than with a claim addressing the manner in which the enactment is administered. *See, e.g., Parsowith v. Commonwealth, Dep't of Revenue*, 555 Pa. 200, 207–08, 723 A.2d 659, 662–63 (1999). They also find support for their position in a portion of that decision expressing that the Legislature generally retains the power to channel issues of a constitutional nature, like all other questions, into a specified route of appeal. *See Borough of Green Tree*, 459 Pa. at 277, 328 A.2d at 823. *See generally Lincoln Phila. Realty Assocs. v. Board of Revision of Taxes of City & County of Phila.*, 563 Pa. 189, 204–05 n. 12, 758 A.2d 1178, 1187 n. 12 (2000) (collecting cases).

▮ Ultimately, however—and importantly for this appeal—that decision did not purport to lay down a *per se* rule precluding jurisdiction absent a facial challenge to the governing statute, but instead focused on the adequacy of the legal remedy afforded, with facial challenges viewed as the category of claims most likely to be associated with the lack of an adequate legal remedy:

> Our opinions in the past have generally shown an awareness that the more direct the attack on the statute, the more likely it is that exercise of equitable jurisdiction will not damage the role of the administrative agency charged with enforcement of the act, nor require, for informed adjudication, the factual fabric which might develop at the agency level. The reason, we believe, is that the determination of the constitutionality of enabling legislation is not a function of the administrative agencies thus enabled. The more closely it appears that the question raised goes directly to the validity of the statute the less need exists for the agency involved to throw light on the issue through exercise of its specialized fact-finding function or application of its adminis-

trative expertise. Further, the less need there is for compliance with an agency's procedures as a prerequisite to informed constitutional decision making, then correspondingly greater is the embarrassment caused to litigants by requiring conformity with the statutorily-prescribed remedy.

*Borough of Green Tree*, 459 Pa. at 281, 328 A.2d at 825. From this passage, and in the context of the opinion as a whole, it is evident, as Judge Friedman suggested, that *Borough of Green Tree* left room for equity jurisdiction in other settings in which requiring adherence to the statutory avenue would be of little benefit. *See id.* at 278, 328 A.2d at 824 (advising that the rule requiring litigants to utilize the statutorily-prescribed route of appeal "is not to be unthinkingly applied, but ... exception will be made where the statutory remedy is pointless or inadequate"); *accord Pentlong Corp. v. GLS Capital, Inc.*, 573 Pa. 34, 47 n. 16, 820 A.2d 1240, 1248 n. 16 (2003).[7]

This view was confirmed in the recent case of *Pentlong Corp. v. GLS Capital, Inc.*, 573 Pa. 34, 820 A.2d 1240 (2003), where Allegheny County had sold thousands of property tax liens to a private party (GLS Capital) pursuant to the Municipal Claims and Tax Liens Act. GLS undertook to collect on the liens and sought to force the taxpayers to pay concomitant costs such as interest and lien-docketing fees that the munici-

---

**7.** The lead opinion in *Borough of Green Tree* represented the views of three Justices. Those jurists considered the primary theoretical issue raised in the case to be how to reconcile apparently conflicting lines of precedent in which this Court had, on the one hand, indicated that an action may be brought directly in common pleas court any time a taxing statute is subjected to a constitutional challenge, *see Lynch v. Owen J. Roberts Sch. Dist.*, 430 Pa. 461, 465, 244 A.2d 1, 3 (1968), and on the other hand had indicated that the absence of an adequate statutory remedy comprised an additional prerequisite to equity jurisdiction. *See Rochester & Pittsburgh Coal Co. v. Indiana County Bd. of Assessment & Revision of Taxes*, 438 Pa. 506, 508, 266 A.2d 78, 79 (1970). A fourth Justice concurred in the result and expressed the view that the conflict between *Lynch* and *Rochester* was illusory. In his view, because assessment appeal boards merely review tax assessments and have no constitutional expertise, any time a substantial constitutional question arises concerning the assessment process, the statutory remedy is inadequate, as following it would result in a multiplicity of duplicative lawsuits. *See id.* at 283–86, 328 A.2d at 826–28 (Roberts, J., concurring).

pality would have been able to collect. The primary issue was whether GLS, as a private party, could do this, when the act conferred such collection rights on the municipality. This Court ultimately answered in the affirmative premised upon a part of the statute prescribing that an assignee retains all the rights of the original lien holder. *See id.* at 49, 820 A.2d at 1249. As a threshold question, however, the Court determined whether Pentlong's class-action complaint in equity could be maintained, notwithstanding that the taxpayers could pursue a remedy at law under the act by requesting a writ of *scire facias.* Mr. Justice Nigro, writing for a unanimous Court, explained that, "in order to determine whether equity jurisdiction is proper in the face of an existing legal or statutory remedy, we must determine if the legal remedy available to the plaintiff is adequate and complete.... Where, for instance, a legal remedy would result in a multiplicity of duplicative lawsuits and, in contrast, an action in equity would provide a tidy global resolution, this Court has found the legal remedy to be inadequate." *Id.* at 43–44, 820 A.2d at 1245–46 (citing *Borough of Green Tree,* 459 Pa. at 277, 328 A.2d at 823; *Schrader v. Heath,* 408 Pa. 79, 83–84, 182 A.2d 696, 698 (1962)). The Court then reasoned:

> [T]his case calls for judicial declarations regarding the rights of private parties to whom a municipality has assigned its tax liens. Such matters are completely foreign to the scire facias procedure. With their distinct factual focus, scire facias proceedings are simply ill-suited for the resolution of the novel and purely legal challenges presented here. Moreover, even if thousands of delinquent taxpayers affected by GLS's collection policies were able to have their legal challenges to GLS's authority resolved through the scire facias procedure, they would have to do so individually in piecemeal litigation, which not only is inefficient, but is also likely to yield inconsistent results.

*Pentlong,* 573 Pa. at 46–47, 820 A.2d at 1247. On this basis, the Court determined that the legal remedy premised upon writs of *scire facias* was inadequate, and Pentlong's action in equity was maintainable. *See id.* at 47, 820 A.2d at 1248.

■■ While any analogy between *Pentlong* and the present dispute is imperfect—for example, legal issues are not "completely foreign" to tax appeals *de novo* in the trial court—there is plainly some overlap, as the claimed procedural defect raises legal issues independent of the proper valuation of the properties that are the subject of the tax appeals. Just as importantly, it arises from an alleged policy and practice directive setting forth rules that are on their face applicable in a general fashion to all assessment grievances that come before the Board. As detailed in Judge Freidman's responsive opinion in the present case, *see Kowenhoven*, 847 A.2d at 177–78 (Friedman, J., concurring and dissenting), concerns over piecemeal litigation and inefficiency occasioned by strict adherence to the statutory appeal process are present here, just as they were in *Pentlong;* thus, a multiplicity of individual *de novo* appeals to the trial court may be avoided through judicial review of the constitutionality of the Board's overall procedures. Further, given that the general procedures of which Appellants complain can be facially tested against constitutional norms unaided by agency expertise, there is little practical difference between the present challenge and one in which the constitutional validity of a taxing statute is in issue. *Cf. Borough of Green Tree*, 459 Pa. at 279, 328 A.2d at 824 ("Where the administrative process has nothing to contribute to the decision of the issue and there are no special reasons for postponing its immediate decision, exhaustion should not be required." (quoting L. JAFFE, *JUDICIAL CONTROL OF ADMINISTRATIVE ACTION* 440 (1965))).[8]

We also note that, if the allegations in the complaint are ultimately borne out, many of the taxpayers potentially affected by the Board's procedures may not have known that the final assessment in their particular case was reached on

8. This is not intended to suggest that ordinary administrative review may be bypassed as a matter of course simply by adding a constitutional claim, no matter how tenuous, to an assessment grievance. Rather, "what is required to confer jurisdiction on an equity court is the existence of a substantial question of constitutionality (and not a mere allegation) and the absence of an adequate statutory remedy." *Borough of Green Tree*, 459 Pa. at 274, 328 A.2d at 822 (quoting *Rochester*, 438 Pa. at 508, 266 A.2d at 79).

grounds other than the evidence and arguments presented through the appeal and hearing process in which they participated. *See* Complaint at ¶ 60. This adds support to the position that proceeding in equity is appropriate, as those taxpayers' alleged lack of knowledge concerning how their grievances were resolved may have contributed to a number of individual decisions not to seek judicial review after an adverse ruling by the Board. Therefore, we conclude that the trial court should not have dismissed Appellants' class-action equitable claim due to their ability to invoke the statutory appeal mechanism.

## III.

Regarding Appellants' request for a declaratory judgment, we note that, subsequent to *Borough of Green Tree,* as part of the Declaratory Judgments Act,[9] the General Assembly formally abolished the principle precluding declaratory relief solely due to the existence of a statutory remedy, as it found that that precept had unreasonably limited declaratory judgments. *See* 42 Pa.C.S. § 7541(b); *see also id.* § 7537 ("[T]he existence of an alternative remedy shall not be a ground for the refusal to proceed under this subchapter."). Although this Court has affirmed that "the declaratory judgment procedure may not be used to prejudge issues that are committed for initial resolution to an administrative forum, any more than it may be used as a substitute to establish in advance the merits of an appeal from that forum," *Commonwealth, Dep't of Gen. Servs. v. Frank Briscoe Co.,* 502 Pa. 449, 459, 466 A.2d 1336, 1341 (1983), the same factors that presently contribute to our determination that equity jurisdiction is available apply with respect to the trial court's ability to provide declaratory relief. In particular, the possibility that hundreds of assessment grievances were resolved based on extra-record evidence distinguishes the present case from a dispute over issues that could be determined first in the administrative setting, or from an attempt to have the court

9. Act of July 9, 1976, P.L. 586, No. 142, § 2 (as amended, 42 Pa.C.S. §§ 7531–7541).

pre-judge the merits of one or a handful of specific assessment disputes.

## IV.

As a final matter, we must determine whether the Commonwealth Court correctly held that Appellant's Section 1983 claim was properly dismissed. In *Murtagh v. County of Berks,* 535 Pa. 50, 62–63, 634 A.2d 179, 185 (1993), this Court indicated that a class of taxpayers challenging the constitutionality of a local taxing system could maintain a Section 1983 cause of action in state court without first exhausting administrative remedies, largely on the premise that issues of federalism and federal-state comity that tend to restrain the federal courts from intruding into state tax matters simply do not exist in the context of a state court proceeding.[10] Two years later, however, the United States Supreme Court issued its decision in *National Private Truck Council, Inc. v. Oklahoma Tax Comm'n,* 515 U.S. 582, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995), in which it explained that, where the state provides an adequate legal remedy, litigants cannot obtain Section 1983 declaratory or injunctive relief, whether they bring their suit in state or federal court. *See id.* at 589–91, 115 S.Ct. at 2355–56.[11] That decision had the effect of negating this Court's

---

10. For Section 1983 purposes, constitutional precepts governing taxation by the States, as well as issues of federal-state comity, apply to taxation by municipalities, as the latter are subdivisions of the States. *See Fair Assessment in Real Estate Ass'n v. McNary,* 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981) (applying these principles to a county tax regime).

11. In *National Private Truck Council,* the Supreme Court indicated that, contrary to *Murtagh's* suggestion, issues of comity and federal restraint do apply to state court proceedings where Section 1983 is invoked in the context of a state tax dispute. This is because Section 1983 is federal law that, in the taxation context, has the potential to interfere with the states' governmental operations by disrupting their revenues. *See National Private Truck Council,* 515 U.S. at 586, 115 S.Ct. at 2354 (quoting *Dows v. City of Chicago,* 78 U.S. (11 Wall.) 108, 110, 20 L.Ed. 65 (1870)); *California v. Grace Brethren Church,* 457 U.S. 393, 410 & n. 23, 102 S.Ct. 2498, 2509 & n. 23, 73 L.Ed.2d 93 (1982); *Rosewell v. LaSalle Nat'l Bank,* 450 U.S. 503, 527, 101 S.Ct. 1221, 1236, 67 L.Ed.2d 464 (1981); *Fair Assessment in Real Estate Ass'n v. McNary,* 454 U.S. 100, 110, 102 S.Ct. 177, 183, 70 L.Ed.2d 271 (1981) (observing that the Tax Injunction Act was instituted to curtail federal interference with

holding in *Murtagh*.[12] Furthermore, although Section 1983 injunctive and declaratory relief were at issue in *National Private Truck Council*, its reasoning applies equally to a Section 1983 request for money damages, particularly in view of the Court's earlier pronouncement, in *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 115–16, 102 S.Ct. 177, 186, 70 L.Ed.2d 271 (1981), that the disruption to state tax systems caused by a damages action is no less severe than that caused by an action for an injunction. *See National Private Truck Council*, 515 U.S. at 587, 115 S.Ct. at 2355 ("Congress never authorized federal courts to entertain damages actions under § 1983 against state taxes when state law

state taxation); *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 298, 63 S.Ct. 1070, 1073, 87 L.Ed. 1407 (1943) ("The scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts, and a proper reluctance to interfere by injunction with their fiscal operations, require that such relief should be denied in every case where the asserted federal right may be preserved without it." (quoting *Matthews v. Rodgers*, 284 U.S. 521, 525, 52 S.Ct. 217, 219, 76 L.Ed. 447 (1932))). In this regard, the Court explained:

> [W]e do not understand § 1983 to call for courts (whether federal or state) to enjoin the collection of state taxes when an adequate remedy is available under state law. Given the strong background presumption against interference with state taxation, the Tax Injunction Act may be best understood as but a partial codification of the federal reluctance to interfere with state taxation. After all, an injunction issued by a state court pursuant to § 1983 is just as disruptive as one entered by a federal court.

*National Private Truck Council*, 515 U.S. at 588, 115 S.Ct. at 2355 (citation omitted). Put differently, because "the principle of federal constraint in the area of state taxation applies not only to federal courts, but also to federal legislation," Section 1983 is itself circumscribed by that precept. *General Motors Corp. v. City & County of San Francisco*, 69 Cal.App.4th 448, 81 Cal.Rptr.2d 544, 551 (1999); *see also Murtagh*, 535 Pa. at 63–64, 634 A.2d at 186 (Cappy, J., dissenting).

**12.** Indeed, the *National Private Truck Council* Court explained that it granted *certiorari* to resolve a conflict among state courts on this question, and specifically cited *Murtagh* as representing the position that it ultimately rejected. *See id.* at 586 & n. 3, 115 S.Ct. at 2354 & n. 3. *See generally Kowenhoven*, 847 A.2d at 176 (recognizing that *National Private Truck Council* essentially overruled *Murtagh*); *Jordan v. Fayette County Bd. of Assessment Appeals*, 782 A.2d 642, 644 (Pa.Cmwlth.2001) (same); *Stranahan v. County of Mercer*, 697 A.2d 1049, 1052 n. 6 (Pa.Cmwlth.1997) (same); *Garrett Group v. County of Schuylkill*, 667 A.2d 255, 257 n. 5 (Pa.Cmwlth.1995) (same).

furnishes an adequate legal remedy."). Thus, under the Supreme Court's interpretation of federal law, it is now apparent that Section 1983 monetary damages are unavailable in tax cases brought in state court when an adequate legal remedy exists. *Accord Patel v. City of San Bernardino,* 310 F.3d 1138, 1142 n. 3 (9th Cir.2002); *Kerr v. Waddell,* 185 Ariz. 457, 916 P.2d 1173, 1179 (Ariz.Ct.App.1996); *General Motors Corp. v. City & County of San Francisco,* 69 Cal.App.4th 448, 81 Cal.Rptr.2d 544, 550–51 (1999); *Francis v. City of Columbus,* 267 Neb. 553, 676 N.W.2d 346, 352 (2004); *General Motors Corp. v. City of Linden,* 143 N.J. 336, 671 A.2d 560, 565 (1996); *Murtagh v. County of Berks,* 715 A.2d 548, 551 (Pa.Cmwlth. 1998).

The question, then, becomes whether an adequate Pennsylvania legal remedy exists for purposes of Section 1983. Notably, determining whether a remedy is adequate in this setting involves a different inquiry than the one employed above regarding the adequacy of Appellants' statutory remedy. That analysis was undertaken to determine whether the trial court had equity jurisdiction, and focused upon such considerations as whether numerous duplicative lawsuits were likely to be filed, and whether administrative expertise and factual development would be helpful in resolving the constitutional issues raised. In the Section 1983 context, however, the lack-of-an-adequate-legal-remedy prerequisite is motivated by the federal government's reluctance to interfere with state tax operations, and its resulting "hands-off approach." *National Private Truck Council,* 515 U.S. at 586, 115 S.Ct. at 2354; *see supra* note 11. Therefore, the specific manner in which the taxpayer obtains relief—whether through administrative exhaustion or through an action in equity—is of little federal concern; what matters is that the litigant have some reasonable means within the state court system to obtain redress for a violation of federal rights. *Cf. Rosewell v. LaSalle Nat'l Bank,* 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981) (addressing the meaning of a "plain, speedy and efficient remedy" for purposes of the Tax Injunction Act).

■ Here, as we have concluded that equity jurisdiction exists in the trial court, the proceedings available to Appellants on remand will resolve whether the Board's adjudicative process is systemically flawed, as Appellants contend. The injunctive and/or declaratory relief they seek will presumably be forthcoming should they prevail on the merits, and Appellants do not challenge the sufficiency of the refund procedure provided by state law. Thus, while Appellants may ultimately be able to demonstrate that their state law remedy is inadequate if, for example, the Board suffers an adverse ruling and, nonetheless, continues to cause them injury through use of the same unconstitutional procedures, *see National Private Truck Council*, 515 U.S. at 591 n. 6, 115 S.Ct. at 2357 n. 6; *Ramah Navajo Sch. Bd. v. New Mexico Taxation & Revenue Dep't*, 127 N.M. 101, 977 P.2d 1021, 1026 (N.M.Ct.App.1999), that situation is not currently before us. Hence, we find that Appellants' state law remedy is presently adequate, thus removing an essential prerequisite to their ability to assert a Section 1983 cause of action.[13] *Cf. Gass v. County of Allegheny*, 371 F.3d 134, 137–38 (3d Cir.2004) (stating that this Court's decisional law allowing aggrieved taxpayers to bypass statutory procedures and file for equitable relief in the court of common pleas has contributed to a "plain, adequate, and complete" remedy for purposes of the Tax Injunction Act, thereby precluding federal jurisdiction to entertain a Section 1983 claim).

Accordingly, the order of the Commonwealth Court is affirmed insofar as it upholds the dismissal of Appellants' Sec-

13. As noted above, Appellants also requested attorney's fees as part of their civil rights claim. If they prevail on the merits and are unable to secure an award of fees under state law as they might have been able to do under Section 1988(b), 42 U.S.C. § 1988(b), this alone would not render their remedy inadequate. *Accord Patel v. City of San Bernardino*, 310 F.3d 1138, 1142 (9th Cir.2002); *General Motors Corp. v. City & County of San Francisco*, 69 Cal.App.4th 448, 81 Cal.Rptr.2d 544, 550 (1999); *Jade Aircraft Sales, Inc. v. Crystal*, 236 Conn. 701, 674 A.2d 834, 838 (1996); *New England Legal Found. v. City of Boston*, 423 Mass. 602, 670 N.E.2d 152, 161 (1996); *Howell Lumber Co. v. City of Tuscaloosa*, 757 So.2d 1173, 1180 (Ala.Civ.App.1997), *rev'd in part on other grounds sub nom. Ex parte City of Tuscaloosa*, 757 So.2d 1182 (Ala. 1999).

tion 1983 claim, and reversed in all other respects, and the case is remanded to the court of common pleas for further proceedings consistent with this Opinion.

Justice CASTILLE, Justice NEWMAN and Justice EAKIN and BAER join this opinion.

Former Justice NIGRO did not participate in the decision of this case.

Chief Justice CAPPY files a concurring and dissenting opinion.

Chief Justice CAPPY, concurring and dissenting.

I agree with the Majority that Appellants' claim pursuant to 42 U.S.C. § 1983 was properly dismissed. Where I part ways with the Majority is in its analysis of and conclusion regarding the issue of whether equity jurisdiction was properly invoked in this matter.

At issue is whether in seeking relief under state law, Appellants can pursue their claims in equity rather than following the statutorily-mandated procedure of taking a *de novo* appeal to the trial court from an unfavorable decision of the Board of Property Assessment Appeals and Review ("Board"). It is axiomatic that where the Legislature has provided a statutory remedy to rectify an alleged wrong, a plaintiff is to utilize that statutory method. *See Borough of Green Tree v. Bd. of Prop. Assessments, Appeals and Review of Allegheny Cty.*, 459 Pa. 268, 328 A.2d 819, 823 (1974) (plurality) (stating that our Commonwealth's constitution empowers our legislature to limit the equitable jurisdiction of our courts of common pleas by establishing statutory methods for seeking redress). This Court has recognized a limited exception to this general rule. This exception declares that a plaintiff may eschew a statutory method of redress and instead turn to equity when the plaintiff shows that the legal remedy is not adequate or complete. *Pentlong Corp. v. GLS Capital, Inc.*, 573 Pa. 34, 820 A.2d 1240, 1245 (2003).

In the instant matter, the question is whether Appellants have qualified for this exception by establishing that a *de novo* appeal to the trial court from an unfavorable decision by the Board is not adequate or complete. The Majority concludes that Appellants have shown that such a remedy is not adequate or complete and thus qualify for the exception. The Majority provides several bases of support for this conclusion. First, the Majority reasons that allowing this class action matter to proceed in equity would achieve the laudable goal of avoiding "a multiplicity of individual *de novo* appeals to the trial court. . . ." M.O. at 559, 901 A.2d at 1012 (relying on *Pentlong, supra*). The Majority also finds that this matter should be allowed to proceed in equity because "the general procedures of which Appellants complain can be facially tested against constitutional norms unaided by agency expertise. . . ." *Id.* Finally, the Majority concludes that equity jurisdiction was properly invoked based on the speculation that "many of the taxpayers potentially affected by the Board's procedures may not have known" that the decision in their appeals was premised on evidence which is allegedly *dehors* the record. *Id.* at at 559, 901 A.2d at 1012. Thus, equity will lie because some taxpayers may have failed to pursue their statutorily-allowed appeal because they were ignorant of this potential due process claim.

I am unconvinced by this reasoning. First, I do not believe that *Pentlong* holds that equity jurisdiction may be invoked simply because such invocation will avoid having multiple matters proceed through the legislatively-endorsed appeals process. It is true that the *Pentlong* Court's concern over piecemeal litigation supported the Court's decision to allow the plaintiffs to forego the statutory remedy and invoke equity jurisdiction. *See Pentlong*, 820 A.2d at 1246. Yet, what drove the *Pentlong* decision was not simply that equity jurisdiction would provide "a tidy global resolution" to that controversy. *Id.* Rather, the *Pentlong* Court noted that that matter involved "purely legal challenges. . . ." *Id.* at 1247. In *Pentlong*, there was no simmering question of fact; in that matter, it was undisputed that the County of Allegheny ("County") sold its title and rights over thousands of tax liens located within

the County. Thus, that matter was well-suited to resolution via a class action in equity. In contrast, in the matter *sub judice,* there are open questions as to whether all members of the class had the assessment appeals determined via reliance on evidence *dehors* the record. A "tidy global resolution" will thus not be afforded by a class action in equity.

I also reject the Majority's reasoning that equity jurisdiction is proper here because "the general procedures of which Appellants complain can be facially tested against constitutional norms unaided by agency expertise. . . ." M.O. at at 559, 901 A.2d at 1012. By stating that "agency expertise" is not needed here, the Majority implies that equity is properly invoked because funneling these matters through further agency adjudication will not aid in resolution of these matters. This is paper tiger reasoning. Appellants have already appeared before the Board. In fact, it is the Board's actions which Appellants complain are constitutionally deficient. The next step in the statutory appeals process which Appellants are trying to avoid would have taken them not to an administrative body but rather to the trial court. Thus, the fact that "agency expertise" is not necessary in the resolution of these legal issues is of no moment because "agency expertise" would not have been sought had Appellants followed the statutory appellate process.

Finally, the Majority reasons that equity is properly invoked because some taxpayers may have declined to take a statutory appeal as they may have been unaware that the Board relied on evidence *dehors* the record in determining their assessment appeals. Even if we accept such speculation as true, I do not see how it renders the statutory process inadequate or incomplete. As noted by the Commonwealth Court, the statutory process allows taxpayers to ferret out information via discovery. *See* Commw. Ct. slip op. at 8. And any constitutional issues which a taxpayer would wish to raise could adequately and completely be addressed to a trial court in a *de novo* appeal.

I fear that the Majority's interpretation of when a statutory remedy is incomplete and inadequate is so broad that the exception threatens to engulf the rule. As I believe that

Appellants have not shown that the statutory remedy is either incomplete or inadequate, I dissent to that portion of the majority's order and would affirm the order of the Commonwealth Court.